[No. A067392. First Dist., Div. One. Aug. 16, 1996.]

MARY ANN TODD-STENBERG, Plaintiff and Respondent, v.
DALKON SHIELD CLAIMANTS TRUST, Defendant and Appellant.

ELAINE FORD COSCIA, Plaintiff and Respondent, v.
DALKON SHIELD CLAIMANTS TRUST, Defendant and Appellant.

ANNE MARIE CRILLY, Plaintiff and Respondent, v.
DALKON SHIELD CLAIMANTS TRUST, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Facts and parts II, III and IV.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne, Frederick D. Baker, Kathleen D. Patterson, Kirk C. Jenkins, Tilly & Graves and Charles Q. Socha for Defendant and Appellant.

B. E. Bergesen III, Conklin, Davids & Friedman, Dennis B. Conklin and John J. Davids for Plaintiffs and Respondents.

## OPINION

**STEIN, J.**—This appeal follows a judgment entered on three consolidated actions. In each, the plaintiff, Mary Ann Todd-Stenberg, Elaine Ford Coscia and Anne Marie Crilly, respectively, alleged that she had suffered injuries resulting from the use of an intrauterine device (IUD) known as the Dalkon Shield. We need not repeat here much of the procedural history of these claims. It is enough that A. H. Robins, the manufacturer of the Dalkon Shield, filed for relief under chapter 11 of the United States Bankruptcy Code, that the Dalkon Shield Claimants Trust (the Trust) was formed as a result of the bankruptcy proceeding and that respondents here each properly filed a complaint against the Trust. The superior court granted the motion of respondents to consolidate their actions for trial. A jury thereafter returned a verdict in favor of all three respondents, awarding damages $90,000 to Crilly, $125,000 to Coscia and $275,000 to Todd-Stenberg. The Trust appeals.

The Trust's main contention on appeal is that the trial court erred in consolidating the cases. The Trust accordingly argues that the cases did not meet the criteria for consolidation. It argues that consolidation caused the Trust undue prejudice, causing the jury to ignore all the evidence and arguments made by the parties and to decide against the Trust primarily because there were three plaintiffs claiming harm from the same source. The Trust also argues that the consolidation violated its right to due process and its right to a jury trial. We conclude, to the contrary, that the trial court had the discretion to consolidate the cases, that the record reveals no undue prejudice or deprivation of rights to the Trust resulting from consolidation and that the verdicts are supported by the evidence. We further reject the Trust's additional claims of error in instructions and error in failing to dismiss or sever Coscia's case as a sanction.

### FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

### I.

#### *Consolidation*

█ Code of Civil Procedure section 1048 grants discretion to the trial courts to consolidate actions involving common questions of law or fact. The trial court's decision will not be disturbed on appeal absent a clear showing

---

*See footnote, *ante*, page 976.

of abuse of discretion. (*Estate of Baker* (1982) 131 Cal.App.3d 471, 485 [182 Cal.Rptr. 550]; *Fellner* v. *Steinbaum* (1955) 132 Cal.App.2d 509, 511 [282 P.2d 584].) The Trust cites a number of cases from other jurisdictions in which the courts determined that the actions before them did not involve significant common issues, that the common issues did not predominate over the individual issues or that the risks of jury confusion or the prejudice to a party outweighed the reduction in time and expense that would result from consolidation. The issue before us is whether the cases consolidated *here* had common issues and whether undue confusion or prejudice was likely to result from the consolidation.

Six actions were consolidated. By the time of trial, however, only three actions remained. In each, the plaintiff claimed she had suffered pelvic inflammatory disease (PID) as a result of her use of a Dalkon Shield. The trial court correctly anticipated that a large portion of the trial would be devoted to issues common to the three cases: how PID occurs, whether it can be caused by the use of Dalkon Shield, and what other factors might cause or contribute to the disease. In short, a large part of the trial was devoted to educating the jury about the female reproductive system, the Dalkon Shield and PID. Some of this evidence was in the form of deposition testimony relating to the structure of the Dalkon Shield, and did not consider the plaintiffs' individual cases in any way. Other evidence was adduced through expert witnesses called by the parties at trial. Much of this evidence was relevant to the structure of the Dalkon Shield and its propensity to cause or contribute to PID, and did not consider the plaintiffs' individual cases. In addition, the parties were able to use the same witnesses not only to discuss these general issues, but to address the probable cause, extent and result of the PID in each of the plaintiffs. Had there been three separate trials the same deposition testimony would have been introduced, many of the same expert witnesses called and much of the same evidence presented. The record, therefore, discloses that consolidation was appropriate.

The Trust emphasizes that it had offered to stipulate that "the tailstring of the Dalkon Shield had the capacity to facilitate the movement of bacteria to the uterine cavity." The plaintiffs, however, rejected the stipulation, a rejection that, in the Trust's opinion, "manufactured" a common issue of causation in general, and necessitated the majority of the evidence common to the consolidated cases. Acceptance of the proposed stipulation would not have had significant effect on the extent of the evidence introduced. The plaintiffs sought to prove not just that the string had the capacity to facilitate the movement of bacteria to the uterine cavity, but that bacteria did in fact move through the string. The plaintiffs offered other evidence that the Dalkon Shield itself, which had the capability of becoming embedded in the lining

of the uterus, added to the risk of PID. In addition, the common evidence designed to educate the jury about the female reproductive system and diseases to the reproductive organs, concerned not just the propensity of the Dalkon Shield to transmit bacteria, but the reasons for concluding that a particular case of PID was or was not related to the device. Finally, the Trust itself introduced testimony that there was no evidence that a tailstring ever had transmitted harmful bacteria into a uterus. All of this evidence went to common issues that would have remained relevant even had the plaintiffs accepted the Trust's stipulation.

We also agree with the trial court's reasoning that consolidation of the cases would not unduly confuse the jury or prejudice the Trust. There were only three plaintiffs. The jury was given a separate binder of evidence and separate chronologies prepared on each plaintiff. It is highly unlikely that the jury would have confused the cases. That unlikelihood is borne out by the fact that the jury returned three very different awards of damages, consistent with the evidence, demonstrating their ability to distinguish between the plaintiffs.

The out-of-state cases cited by the Trust, while potentially persuasive in similar actions, provide no binding precedent for their position. In addition, they are, for the most part, distinguishable from the present case. Most involved a substantially greater number of plaintiffs than the three, or even the original six, plaintiffs in the present case. (E.g., *In re Agent Orange Prod. Liability Litigation* (2d Cir. 1987) 818 F.2d 145: over 100,000 notified plaintiffs; *In re FibreBoard Corp.* (5th Cir. 1990) 893 F.2d 706: 3,031 cases; *In re Northern Dist. of Cal., Dalkon Shield, etc.* (9th Cir. 1982) 693 F.2d 847: 166 northern California actions consolidated and nationwide class certified, noting that approximately 2,200,000 Dalkon Shields had been inserted in women and 1,573 claims were then pending.) In such cases there is a far more significant possibility of confusing the jury than existed here. Furthermore, the percentage of trial time devoted to individual issues increases with every additional plaintiff. *Hasman* v. *G. D. Searle & Co.* (E.D.Mich. 1985) 106 F.R.D. 459, on which the Trust principally relies, did involve only three plaintiffs. The case, however, simply is the decision of the district court denying a motion to consolidate. That the trial court in that case denied consolidation based on its understanding of the issues, does not mean that the trial court in the present case abused its discretion by granting consolidation here.

In related arguments the Trust contends that the verdicts were not supported by the evidence, thereby confirming that it was prejudiced by the consolidation, and that the confusion and prejudice engendered by the consolidation violated its right to due process and deprived it of a jury trial.

Although it certainly is possible that such dire results could follow consolidation, the record simply does not reflect the massive confusion and prejudice asserted by the Trust. There is no hard evidence that the jury confused the plaintiffs in finding liability or assessing damages. There were only three plaintiffs and as the evidence relating to each was carefully presented and delineated there was very little likelihood of confusion. Finally, the evidence amply supports the verdicts. The Trust's claim that the jury somehow would become convinced that the cases had merit simply because there were three plaintiffs accords little credit to the jury. It also disregards the very significant evidence put on not only by the plaintiffs as to the cause and extent of each woman's injuries, but the evidence put on by the Trust that there are many different causes of PID, that the Dalkon Shield probably is not a factor in causing PID and that each plaintiff was at risk of infection for one or some other reason or reasons. In short, after reviewing the record, we conclude that substantial evidence supports the verdicts and that there is no reason to conclude that the jury ignored the evidence and arguments of the parties in resolving the issues.[1]

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The judgments are affirmed.

Strankman, P. J., and Dossee, J., concurred.

---

[1]Contrast *Cain* v. *Armstrong World Industries* (S.D.Ala. 1992) 785 F.Supp. 1448, a consolidation of 10 personal injury actions and 3 wrongful death cases alleging injury or death from exposure to asbestos. The jury awarded identical measures of damages to each plaintiff making a particular claim ($80,000 for future medical expenses and $500,000 for pain and suffering for each noncancer personal injury case, $100,000 for future medical expenses and $750,000 for pain and suffering to each cancer personal injury case, etc.) In such a situation the inference is overwhelming that the jury did not differentiate between the cases.

*See footnote, *ante*, page 976.