[No. S067462. Nov. 9, 1998.]

MERCURY INSURANCE GROUP, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
RONALD A. WOOSTER et al., Real Parties in Interest.

336

**COUNSEL**

Williamson, Raleigh & Doherty, John K. Raleigh and Jeffrey H. Leo for Petitioner.

No appearance for Respondent.

Magana, Cathcart & McCarthy, Richard L. Bisetti and Marnie S. Skeen for Real Parties in Interest.

Anthony P. David as Amicus Curiae on behalf of Real Parties in Interest.

**OPINION**

**MOSK, J.**—We granted review to address an important question of law: Does a trial court have authority to "consolidate" a contractual arbitration proceeding between an insurer and an insured as to uninsured motorist coverage in the insured's pending action against third parties—strictly speaking, does it have authority to join the insurer as a defendant as to uninsured motorist coverage issues—for all purposes, including trial, in order to avoid conflicting rulings on a common issue of law or fact? As we shall explain, we conclude that the answer that we must give is: Yes.

I

Although it contains some gaps and ambiguities, the record on review may be read to this effect.

Following a motor vehicle accident on a rural highway in San Bernardino County, Ronald A. and Andrea Wooster, who are husband and wife, filed a complaint in that county's superior court seeking damages for personal injury, and specifically bodily injury, against persons and entities including a motorist named Samuel Lewis Hull, Hull's employer, Mountain Top Rentals, and, by fictitious name, an unidentified motorist who fled the scene. They demanded trial by jury.

Prior to the accident, the Woosters had been issued an automobile liability insurance policy by Mercury Insurance Group (hereafter Mercury). As required by the uninsured motorist coverage law, the policy included coverage for damages for bodily injury caused by an uninsured motorist. As also required by the uninsured motorist law, the policy provided that the "determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the [insurer] or, in the event of disagreement, by arbitration"—meaning *contractual* arbitration, which generally results in a binding and final decision. The Woosters presented Mercury with a claim for damages caused by the unidentified, and effectively uninsured, motorist. The Woosters and Mercury apparently disagreed. The Woosters then made a demand on Mercury for contractual arbitration. A contractual arbitration proceeding commenced.

Over Mercury's opposition, the Woosters moved to "consolidat[e]" the contractual arbitration proceeding with Mercury as to the uninsured motorist coverage issues with the pending action against Hull and Mountain Top Rentals—in effect, to join Mercury as a defendant as to these questions—"for all purposes," including trial, in order to avoid conflicting rulings on a common issue of law or fact. The superior court generally granted the motion. In its order, it broadly "consolidat[ed]" the contractual arbitration proceeding with the pending action. But it did not "decide[]" whether to do so "as to . . . trial."

The superior court subsequently diverted the now-consolidated action to judicial arbitration, which generally does not result in a binding or final decision. A judicial arbitration hearing was later scheduled.

Over the Woosters' opposition, Mercury moved for separate judicial arbitration and contractual arbitration. Specifically, it sought an order for: (1) judicial arbitration as to the consolidated action generally—apparently distinct from the uninsured motorist coverage issues—to result in a decision that would not be binding or final as between the Woosters and Hull and Mountain Top Rentals; and (2) contractual arbitration as to the uninsured

motorist coverage issues—apparently distinct from the consolidated action generally—to result in a decision that would be binding and final as between the Woosters and itself. The superior court denied the motion by order. In so doing, it made a "clarification" to the effect that the consolidation of the contractual arbitration proceeding with the pending action was "for all purposes, including trial."

In the Court of Appeal, Fourth Appellate District, Division Two, Mercury filed a petition for a writ of mandate against the superior court relating to its order denying its motion for separate judicial arbitration and contractual arbitration, and requested a stay of the scheduled judicial arbitration hearing. The Court of Appeal summarily denied the petition and the request.

In the superior court, Mercury filed a notice of appeal from the order denying its motion for separate judicial arbitration and contractual arbitration, describing the order as one "denying" a "[m]otion . . . for an [o]rder compelling arbitration." In the Court of Appeal, it filed a docketing statement identifying the "[n]ature of order or judgment appealed" as "[o]rder denying [m]otion [c]ompelling [a]rbitration."

At the threshold, the Court of Appeal declined to treat Mercury's appeal as such. It stated that the "question of appealability was far from clear in advance . . . ." It noted that an order denying a petition to compel contractual arbitration would be appealable. It concluded that, if Mercury's motion for separate judicial arbitration and contractual arbitration could properly be characterized as such a petition, then the superior court's order denying its motion could properly be characterized as an order denying such a petition, and would therefore be appealable. It asserted, however, that the condition was not satisfied.

Treating Mercury's appeal as a petition for writ of mandate—which it concluded was not "preclude[d]" by its summary denial of the previous one—the Court of Appeal proceeded to find its position meritorious.

Relying on *Prudential Property & Casualty Ins. Co.* v. *Superior Court* (1995) 36 Cal.App.4th 275 [42 Cal.Rptr.2d 227] (hereafter sometimes *Prudential Property & Casualty*), the Court of Appeal concluded, in substance, that, as a general matter, a trial court has authority to consolidate a contractual arbitration proceeding between an insurer and an insured as to uninsured motorist coverage in the insured's pending action against third parties in order to avoid conflicting rulings on a common issue of law or fact. In the words of *Prudential Property & Casualty*, such consolidation " 'may be an important tool where an auto accident victim has claims against several

defendants, one of whom is uninsured . . . .'" (*Id.* at p. 279 (*per curiam*), quoting Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1994) ¶ 4:328, p. 4-70.) " '[A]rbitration could be dangerous for [the victim] . . . because [his] insurance carrier may attempt to shift responsibility to the other (insured) defendants; and later, at trial, they are likely to blame the uninsured motorist!' " (36 Cal.App.4th at p. 279.)

But relying on *Gordon* v. *G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998 [56 Cal.Rptr.2d 914] (hereafter sometimes *Gordon*), the Court of Appeal concluded, in substance, that a trial court does not have authority to consolidate for all purposes, including trial, even to avoid conflicting rulings on a common issue of law or fact, because of what it believed was a preemptive effect arising from what it believed was a requirement under the uninsured motorist coverage law that, in the event of disagreement between the insurer and the insured, uninsured motorist coverage issues may be resolved *only* by means of contractual arbitration, or at least *only* by means of some kind of "arbitration" resulting in a binding and final decision.

Applying the abuse of discretion standard of review, the Court of Appeal then held that the superior court erred by denying Mercury's motion for separate judicial arbitration and contractual arbitration. Its reasoning appears to have been this: In denying Mercury's motion, the superior court consolidated the contractual arbitration proceeding with the pending action for all purposes, including trial; it was not authorized, however, to do so.

In its judgment, the Court of Appeal caused issuance of a peremptory writ of mandate compelling the superior court (1) to vacate its order denying Mercury's motion for separate judicial arbitration and contractual arbitration, and (2) to make a new and different order directing the Woosters, Hull, Mountain Top Rentals, and Mercury to participate in what appears to be a "consolidated" contractual/judicial arbitration proceeding that would result in a decision that would be binding and final as to the uninsured motorist coverage issues as between the Woosters and Mercury, but not binding or final as to the pending action as between the Woosters and Hull and Mountain Top Rentals.

On the Woosters' petition, we granted review. We now reverse.

## II

Before we address the question whether a trial court has authority to consolidate a contractual arbitration proceeding between an insurer and an insured as to uninsured motorist coverage in the insured's pending action

against third parties—that is, to join the insurer as a defendant as to uninsured motorist coverage issues—for all purposes, including trial, in order to avoid conflicting rulings on a common issue of law or fact, we must consider the laws on financial responsibility, uninsured motorist coverage, contractual arbitration, and judicial arbitration, and their interrelationship.

■ First is the *financial responsibility law*, which appears at Vehicle Code section 16000 et seq. This law requires the owners and operators of automobiles "to be 'financially responsible' (usually by means of insurance) for any" bodily injury or property damage that they may cause. (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1220 [240 Cal.Rptr. 829, 743 P.2d 889].) Its purpose—at least its *primary* purpose—is to assure compensation for persons who have suffered injury or damage of this sort. (Stats. 1974, ch. 1409, § 1, p. 3085; see *King* v. *Meese, supra,* 43 Cal.3d at pp. 1220-1221; *Jess* v. *Herrmann* (1979) 26 Cal.3d 131, 138-139 [161 Cal.Rptr. 87, 604 P.2d 208].)

■ Related to the financial responsibility law is the *uninsured motorist coverage law*, which appears at Insurance Code section 11580.2 et seq.

This law was conceived as a "temporary solution to the problem of the uninsured" owner or operator of an automobile, who, in spite of the financial responsibility law, proved to be "financially *ir*responsible" (Traffic Accident Consequences Subcom. of Assem. Com. on Judiciary, Rep. (1959) 3 Appen. to Assem. J. (1959 Reg. Sess.) p. 10, italics added). It has turned out to be a permanent solution—or, at least, a permanent *partial* solution—to this problem.

At its core, in Insurance Code section 11580.2, the law states that, generally, an automobile liability insurance policy that an insurer issues or delivers to an insured owner or operator covering damages that a third party shall be legally entitled to recover for bodily injury from the insured owner or operator shall also cover damages that the insured owner or operator shall be legally entitled to recover for bodily injury from an *un*insured owner or operator. (*Id.*, subd. (a)(1).) In this aspect, its purpose is to require a "type of self-protection" on the part of insured owners or operators. (Traffic Accident Consequences Subcom. of Assem. Com. on Judiciary, Rep., *supra,* 3 Appen. to Assem. J. (1959 Reg. Sess.) p. 15; see *Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760, 771 [163 Cal.Rptr. 881].)

In addition, in Insurance Code section 11580.2, the law states that such an automobile liability insurance policy shall also "provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between

the insured and the insurer or, in the event of disagreement, by arbitration"—meaning *contractual* arbitration. (*Id.*, subd. (f).) In *this* aspect, its purpose is to offer a means of resolving disputes that is more expeditious and less expensive than litigation. (*Goulart* v. *Crum & Forster Personal Ins. Co.* (1990) 222 Cal.App.3d 527, 530 [271 Cal.Rptr. 627]; *Chrisman* v. *Superior Court* (1987) 191 Cal.App.3d 1465, 1469 [236 Cal.Rptr. 703]; see *Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 992 [103 Cal.Rptr. 919, 500 P.2d 1119].) Its beneficiaries include the insurer and the insured, who are each thereby given a right against litigating these issues. (See *Goulart* v. *Crum & Forster Personal Ins. Co., supra*, 222 Cal.App.3d at p. 530.) But they also include the courts themselves, which are thereby freed from entertaining such litigation. (See *ibid.*)

■ Connected to the uninsured motorist coverage law is the *contractual arbitration law*, which appears at Code of Civil Procedure section 1280 et seq. This law is implicated because the uninsured motorist coverage law requires an automobile liability insurance policy, which is a *contract* (see, e.g., *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766]), to provide for *arbitration.*

The law functions as a comprehensive scheme regulating contractual arbitration. (E.g., *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Contractual arbitration generally results in a binding and final decision. (E.g., *ibid.*) The purpose of this law is to promote contractual arbitration, in accordance with a "strong public policy" in favor thereof (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251]), as a more expeditious and less expensive means of resolving disputes than litigation. (See, e.g., *Moncharsh* v. *Heily & Blase, supra*, 3 Cal.4th at p. 9.)

In Code of Civil Procedure section 1281, the law states that, generally, a "written agreement to submit" a dispute "to arbitration . . . is valid, enforceable and irrevocable . . . ."

In Code of Civil Procedure section 1281.2—which is crucial to our analysis—the law further states that, on petition of a party alleging that an arbitration agreement exists and that another party thereto refuses to comply, a trial court shall generally compel the parties to arbitrate if it determines that such allegations are true. It may decline to compel, however, if it determines that the petitioning party has waived its right. (*Id.*, subd. (a).) It may also decline to compel if it determines that grounds exist for the "revocation" (*id.*, subd. (b))—meaning "rescission" (*Engalla* v. *Permanente*

*Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903])—of the agreement in question. (Code Civ. Proc., § 1281.2, subd. (b).) Lastly, it may decline to compel if it determines that a "party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (*Id.*, subd. (c).) In such a situation, it may, among other options, "order intervention or joinder of all parties in a single action or special proceeding . . . as to all or only certain issues . . . ." (*Id.*, foll. subd. (c).) There is an exception, however, for a specified kind of arbitration agreement concerning the "professional negligence of a health care provider": a trial court's authority to decline to compel does *not* apply thereto. (*Id.*, subd. (c).) There is no other exception—and none, specifically, for an uninsured motorist coverage provision.

■ Similar to the contractual arbitration law in name, but not in substance, is the judicial arbitration law, which appears at Code of Civil Procedure section 1141.10 et seq., and is implemented as to "practice and procedure" (Code Civ. Proc., § 1141.14) by California Rules of Court, rule 1600 et seq.

This law establishes a largely mandatory system of diversion of a broad range of relatively "small" actions (Code Civ. Proc., § 1141.10, subd. (a)) for attempted resolution "before they become eligible to proceed to . . . trial" (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 524, p. 970). Its title is "inapt . . . , for the system it describes is neither judicial nor arbitration." (*Dodd* v. *Ford* (1984) 153 Cal.App.3d 426, 432, fn. 7 [200 Cal.Rptr. 256]; accord, e.g., *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 907, fn. 7 [30 Cal.Rptr.2d 265, 872 P.2d 1190].) It is not "judicial" because it is not entrusted to a judge. (E.g., *In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 907, fn. 7; *Dodd* v. *Ford*, *supra*, 153 Cal.App.3d at p. 432, fn. 7.) It is not "arbitration," meaning *contractual* arbitration, because it generally does not result in a binding or final decision (see, e.g., *In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 907, fn. 7; *Dodd* v. *Ford*, *supra*, 153 Cal.App.3d at p. 432, fn. 7), but instead allows a trial de novo at the election of any party by timely request therefor (Code Civil Proc., § 1141.20, subd. (b); see Cal. Rules of Court, rule 1616).[1] The purpose of the law is to fashion, and set in operation, a mechanism to resolve

---

[1] In *Dodd* v. *Ford*, *supra*, 153 Cal.App.3d at page 432, footnote 7, and in decisions that have followed, the phrase "extrajudicial mediation" has been used to characterize judicial arbitration. The words may be clear. But they may also be somewhat misleading. "Extrajudicial" may suggest, incorrectly, that judicial arbitration is outside of the court system. And "mediation" may suggest, also incorrectly, that judicial arbitration is merely a "process in which a

disputes more expeditiously and less expensively than continued litigation, to the benefit of the parties and the courts. (See Code Civ. Proc., § 1141.10.)

■ In Code of Civil Procedure section 1141.30, it is declared that the judicial arbitration law and the contractual arbitration law differ the one from the other in their respective spheres. To quote the provision, they are "mutually exclusive and independent of each other."

Unsurprisingly, in light of their mutual exclusiveness and independence, the judicial arbitration law and the contractual arbitration law also differ the one from the other in various features.

For example, as to commencement, contractual arbitration arises solely out of an arbitration agreement, specifically, a *written* arbitration agreement (Code Civ. Proc., § 1281), between the parties thereto (e.g., *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1272 [8 Cal.Rptr.2d 587]; *Herman Feil, Inc.* v. *Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414 [251 Cal.Rptr. 895]), whereas judicial arbitration may be imposed on the parties litigant, whether or not they agree, in writing or otherwise (see Code Civ. Proc., § 1141.11).

As to process, contractual arbitration allows the parties to an arbitration agreement to select the arbitrator (e.g., *Elliott & Ten Eyck Partnership* v. *City of Long Beach* (1997) 57 Cal.App.4th 495, 503 [67 Cal.Rptr.2d 140]; *Cheng-Canindin* v. *Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684 [57 Cal.Rptr.2d 867]), whereas judicial arbitration, absent a stipulation, selects the arbitrator for the parties litigant by operation of law (Code Civ. Proc., § 1141.18; see Cal. Rules of Court, rules 1602-1606). Similarly, contractual arbitration allows the parties to an arbitration agreement to define the powers of the arbitrator (see, e.g., *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at pp. 8-9), whereas judicial arbitration defines the arbitrator's powers for the parties litigant by operation of law (Code Civ. Proc., § 1141.19; Cal. Rules of Court, rule 1614(a)). In addition, contractual arbitration does not permit full and unconditional discovery (see Code Civ. Proc., §§ 1283-1283.1; see generally, 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, §§ 513, 530(1)(e), pp. 952, 975), whereas judicial arbitration does (Cal. Rules of Court, rule 1612; see generally, 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, §§ 530(1)(e), 548(1), pp. 975, 986-987). Further, contractual arbitration dispenses with any necessity to

---

neutral person . . . facilitate[s] communication between . . . disputants to assist them in reaching a mutually acceptable agreement" (Evid. Code, § 1115, subd. (a)).

observe rules of evidence and procedure (Code Civ. Proc., § 1282.2, subd. (d); see generally, 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, §§ 514, 530(1)(c), pp. 952-953, 975), whereas judicial arbitration, although it makes certain modifications, does not (see Cal. Rules of Court, rules 1613(b) & 1614; see generally, 6 Witkin, Cal. Procedure, *supra*, Proceedings Without Trial, §§ 530(1)(c), 553-556, pp. 975, 990-992). Likewise, contractual arbitration generally frees the arbitrator from making a decision strictly in accordance with the law (e.g., *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at pp. 10-11), whereas judicial arbitration does not (cf. Cal. Rules of Court, rule 1614(a)(7) [providing that, in judicial arbitration, the arbitrator has the power "to decide the law and facts of the case and make an award accordingly"]).

Lastly, as to conclusion, contractual arbitration, as noted, generally results in a binding and final decision (e.g., *Moncharsh* v. *Heily & Blase*, *supra*, 3 Cal.4th at p. 9), whereas judicial arbitration generally does not (e.g., *In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 907, fn. 7; *Dodd* v. *Ford*, *supra*, 153 Cal.App.3d at p. 432, fn. 7; see Code Civ. Proc., § 1141.20, subd. (b); Cal. Rules of Court, rule 1616).

### III

We now turn to address the question whether a trial court has authority to consolidate a contractual arbitration proceeding between an insurer and an insured as to uninsured motorist coverage in the insured's pending action against third parties—that is, to join the insurer as a defendant as to uninsured motorist coverage issues—for all purposes, including trial, in order to avoid conflicting rulings on a common issue of law or fact.

As we shall explain, we conclude that a trial court does indeed have such authority.

In Code of Civil Procedure section 1281.2, the contractual arbitration law generally authorizes a trial court to consolidate, that is, to "order intervention or joinder of all parties in a single action or special proceeding . . . as to all or only certain issues" (*id.*, foll. subd. (c)), if it determines that a "party to the arbitration agreement *is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact*" (*id.*, subd. (c)). The law authorizes the trial court to order intervention or joinder. It does not prohibit it from doing so

*for all purposes, including trial.* Neither does any other law, including the uninsured motorist coverage law.

Contrary to the Court of Appeal's conclusion, there is no preemptive effect arising from any requirement under the uninsured motorist coverage law that, in the event of disagreement between the insurer and the insured under an uninsured motorist coverage provision, the issues whether the insured shall be legally entitled to recover damages, and if so, in what amount, may be resolved *only* by means of contractual arbitration, or at least *only* by means of some kind of "arbitration" resulting in a binding and final decision. There is no such effect. That is because there is no such requirement.

It is true that an uninsured motorist coverage provision gives both the insurer and the insured a general right, as a matter of contract, to contractual arbitration of uninsured motorist coverage issues, and that contractual arbitration generally results in a binding and final decision.

It is also true that the uninsured motorist coverage law, which generally mandates such an uninsured motorist coverage provision, gives both the insurer and the insured a general right, as a matter of law, to a contractual right of this sort.

But a general right to contractual arbitration of uninsured motorist coverage issues generally resulting in a binding and final decision simply does not amount to an absolute prohibition against the resolution of such questions by any other means in any other manner.

■ In the general case, in the absence of a petition to compel contractual arbitration, there is no requirement that issues subject to contractual arbitration may be resolved *only* by means of contractual arbitration, or at least *only* by means of some kind of "arbitration" resulting in a binding and final decision. For reasons of their own, the parties may choose to litigate such questions. (See *Lofberg* v. *Aetna Cas. & Sur. Co.* (1968) 264 Cal.App.2d 306, 309 [70 Cal.Rptr. 269].) A trial court is not obligated to force them to contractual arbitration sua sponte. Indeed, from all that appears, it is not authorized to do so. Should the parties choose to litigate such questions in a relatively small action, they may find themselves diverted to judicial arbitration, which generally does not result in a binding or final decision. A trial court is not obligated to make a decision of this sort binding and final. Indeed, it is not authorized to do so: at his or her election by timely request,

any party is allowed a trial de novo (Code Civ. Proc., § 1141.20, subd. (b); see Cal. Rules of Court, rule 1616).

Furthermore, in the general case, even in the presence of a petition to compel contractual arbitration, there is no requirement that issues subject to contractual arbitration may be resolved *only* by means of contractual arbitration, or at least *only* by means of some kind of "arbitration" resulting in a binding and final decision. To be sure, provided that the allegations necessary to such a petition are true, the contractual arbitration law, in Code of Civil Procedure section 1281.2, *generally* mandates a trial court to compel. *But not always.* The trial court may decline to do so if the petitioning party has waived its right. (*Id.,* subd. (a).) *Or* if grounds exist to "revoke" the underlying arbitration agreement by rescission. (*Id.,* subd. (b).) *Or* if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon. (*Id.,* subd. (c).) In such a situation, it may consolidate. (*Id.,* foll. subd. (c).) If it does, it effectively orders the resolution of the issues subject to arbitration within the action or special proceeding in question and, therefore, outside of arbitration. For, in ordering intervention or joinder, it necessarily "refuse[s] to enforce the arbitration agreement . . . ." (*Ibid.*)

■ In the case of uninsured motorist coverage—with which we are here concerned—the same is true. In the absence of a petition to compel contractual arbitration, there is no requirement that uninsured motorist coverage issues may be resolved *only* by means of contractual arbitration, or at least *only* by means of some kind of "arbitration" resulting in a binding and final decision. Nothing bars the insurer and the insured from choosing to litigate. Nothing prevents diversion to judicial arbitration. Even in the presence of a petition to compel contractual arbitration, there is no requirement that these questions may be resolved *only* by such means in such manner. Although the contractual arbitration law generally mandates a trial court to compel, it does not always do so. It broadly applies to *all* contractual arbitration, whether freely chosen by the parties or imposed on them by law, including the uninsured motorist coverage law. (*Porter* v. *Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1289 [51 Cal.Rptr.2d 338].) True, in Code of Civil Procedure section 1281.2, it allows an exception for a specified kind of arbitration agreement concerning the "professional negligence of a health care provider." (*Id.,* subd. (c).) But it does not allow any other—including for an uninsured motorist coverage provision.

In a word, under the contractual arbitration law as it appears in Code of Civil Procedure section 1281.2, the general right to contractual arbitration of

uninsured motorist coverage issues generally resulting in a binding and final decision is, indeed, a right—but nothing more. It may be "revoked" by rescission. Even if not "revoked," it may be lost by a party's waiver. And even if not waived, it may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon.

In accord with our conclusion on the absence of any preemptive effect arising from any requirement under the uninsured motorist coverage law for contractual arbitration as to uninsured motorist coverage issues is *Prudential Property & Casualty*, which "perceive[s]" nothing of the sort. (*Prudential Property & Casualty Ins. Co.* v. *Superior Court, supra*, 36 Cal.App.4th at p. 278 (*per curiam*).) Not to the contrary is *Gordon*. For *Gordon* does not even consider whether any such preemptive effect arising from any such requirement exists. A decision, of course, is not authority for what it does not consider. (E.g., *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) We recognize that *Gordon* contains language to the effect that "[contractual] [a]rbitration of" the "uninsured motorist claims" in that case—which the superior court chose to compel—"was required." (*Gordon* v. *G.R.O.U.P., Inc., supra*, 49 Cal.App.4th at p. 1006.) But such words[2] reflect only the existence of a general right to contractual arbitration of uninsured motorist coverage issues generally resulting in a binding and final decision. It simply does not establish any pertinent preemptive effect arising from any pertinent requirement.

## IV

■■■ We proceed to consider the decision of the Court of Appeal insofar as it vacated the order of the superior court denying Mercury's motion for separate judicial arbitration and contractual arbitration, specifically, judicial arbitration as to the consolidated action generally and contractual arbitration as to the uninsured motorist coverage issues.

■■■ At the threshold, we believe that the Court of Appeal erred by declining to treat Mercury's appeal as such.

We undertake to review the Court of Appeal's action independently. "We have no need to defer, because we can ourselves conduct the same analysis,"

---

[2]Like similar words in decisions including *Goulart* v. *Crum & Forster Personal Ins. Co., supra*, 222 Cal.App.3d at page 528, and *Chrisman* v. *Superior Court, supra*, 191 Cal.App.3d at page 1469.

which "involves a purely legal question or a predominantly legal mixed question." (*Smiley* v. *Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690], affd. (1996) 517 U.S. 735 [116 S.Ct. 1730, 135 L.Ed.2d 25].)

After independent review, we conclude that the action was wrong. An order denying a petition to compel contractual arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) It is true that Mercury submitted a motion rather than a petition. The term "petition," however, has been construed, in practice, to include the term "motion" when, as here, an action is already pending. (See *Mayhew* v. *Benninghoff* (1997) 53 Cal.App.4th 1365, 1368-1369 [62 Cal.Rptr.2d 27]; *Fireman's Fund Ins. Companies* v. *Younesi* (1996) 48 Cal.App.4th 451, 456-457 [55 Cal.Rptr.2d 671]; but see *Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1144, fn. 1 [209 Cal.Rptr. 890] [*semble*], disapproved on another point, *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426, 764 P.2d 278].) That appears sound, inasmuch as one may proceed by motion as well as petition under such circumstances (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1997) ¶ 5:301, p. 5-95). It is also true that Mercury's motion did not seek an order compelling contractual arbitration in terms, but rather separate judicial arbitration and contractual arbitration. It did, however, seek such an order in effect. In requesting separate judicial arbitration and contractual arbitration, it necessarily requested contractual arbitration. To seek an order compelling contractual arbitration in terms is not necessary; to do so in effect is sufficient. (See *Henry* v. *Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 98-100 [284 Cal.Rptr. 255].)

On the merits, we believe that the Court of Appeal erred by holding that the superior court's order denying Mercury's motion for separate judicial arbitration and contractual arbitration was erroneous as unauthorized.

We agree as to what standard of review should be applied, namely, abuse of discretion (cf., e.g., *Todd-Stenberg* v. *Dalkon Shield Claimants Trust* (1996) 48 Cal.App.4th 976, 978-979 [56 Cal.Rptr.2d 16] [consolidation of actions]; *Estate of Baker* (1982) 131 Cal.App.3d 471, 485 [182 Cal.Rptr. 550] [same]), which looks to see "whether the trial court exceeded the bounds of reason" (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]).

But we do not agree as to what the application of that standard should yield. In denying Mercury's motion, the superior court consolidated the

contractual arbitration proceeding with the pending action for all purposes, including trial. It could reasonably have so consolidated in order to avoid conflicting rulings on a common issue of law or fact. For, under the contractual arbitration law as it appears in Code of Civil Procedure section 1281.2, it could reasonably have determined that the contractual arbitration proceeding and the pending action arose "out of the same transaction." (*Id.,* subd. (c).) Indeed, it could not have done otherwise. In addition, it could reasonably have determined that "there [was] a possibility of conflicting rulings on a common issue of law or fact." (*Ibid.*) By way of illustration, in the contractual arbitration proceeding, the arbitrator might conclude that the Woosters were not legally entitled to damages in any amount from the unidentified, and effectively uninsured, motorist, and therefore could not obtain anything from Mercury. In the pending action, however, the superior court might conclude that the Woosters were indeed legally entitled to damages in some amount from the unidentified, and effectively uninsured, motorist, and therefore could obtain such sum from Mercury. As explained, there is no limitation imposed on the superior court's authority to consolidate in order to avoid conflicting rulings on a common issue of law or fact. As also explained, there is no pertinent preemptive effect arising from any pertinent requirement under the uninsured motorist coverage law.

In arguing to the contrary, Mercury asserts that the superior court did not have authority to consolidate the contractual arbitration proceeding with the pending action for all purposes, including trial, even in order to avoid conflicting rulings on a common issue of law or fact. It is without support, resting as it does on a nonexistent preemptive effect arising from a nonexistent requirement under the uninsured motorist coverage law.

Mercury then asserts that, even if the superior court had authority to consolidate the contractual arbitration proceeding with the pending action for all purposes, including trial, it could have exercised such authority only in favor of denial. In part, it maintains, in effect, that trial by jury, which the Woosters demanded, would be *impossible.* It says, for example, that the underlying automobile liability insurance policy would have to be admitted. But it then says that, under Evidence Code section 1155, a liability insurance policy could not be. The first proposition may be true. The second is not. Under Evidence Code section 1155, a liability insurance policy is inadmissible only for the purpose of proving negligence or other wrongdoing. The policy in question would not, and could not, be offered for that purpose. The only negligence or other wrongdoing that would be material would be that of the unidentified, and effectively uninsured, motorist. The policy is not relevant thereto. In other part, it maintains, in effect, that trial by jury would

be *unfair*. It says, for example, that, as a "deep pocket," it might not receive even treatment at the hands of a jury, and hence should not be ordered to submit thereto. Its point implicates an issue of public policy—an issue that the Legislature has already resolved. In Code of Civil Procedure section 1281.2, the contractual arbitration law authorizes a trial court to do what the superior court has done under the present circumstances. (See *id.*, subd. (c); *id.*, foll. subd. (c).) It allows an exception *only* for a specified kind of arbitration agreement concerning the "professional negligence of a health care provider." (*Id.*, subd. (c).) If Mercury believes that the law should allow an additional one for an uninsured motorist coverage provision, it must present its request to the body that can give it satisfaction—which is the Legislature, and not this court.

At the end, Mercury urges that, instead of consolidating the contractual arbitration proceeding with the pending action for all purposes, including trial, the superior court might reasonably have chosen some other means to avoid a conflicting ruling on a common issue of law or fact. Perhaps so. But immaterial. The reasonableness of an approach that was not selected does not entail the unreasonableness of the one that was.

Because of the conclusion at which we have arrived, we are not required to, and do not, consider the decision of the Court of Appeal insofar as it caused issuance of a peremptory writ of mandate compelling the superior court to order the Woosters, Hull, Mountain Top Rentals, and Mercury to participate in what appears to be a "consolidated" contractual/judicial arbitration proceeding that would result in a decision that would be binding and final as to the uninsured motorist coverage issues as between the Woosters and Mercury, but not binding or final as to the pending action as between the Woosters and Hull and Mountain Top Rentals. Whether a trial court has authority to make such an order—as *Gordon* concludes that it does (*Gordon v. G.R.O.U.P., Inc., supra,* 49 Cal.App.4th at pp. 1005-1008)—is a question that we need not, and do not, reach. We note, however, that Code of Civil Procedure section 1281.3, the purported source of such authority, appears only to authorize consolidation of separate *contractual* arbitration proceedings. (See *Keating v. Superior Court* (1982) 31 Cal.3d 584, 611-612 [183 Cal.Rptr. 360, 645 P.2d 1192], app. dism. in part and judg. revd. in part on other grounds *sub nom. Southland Corp. v. Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1].) We also note that "consolidation" of contractual arbitration and judicial arbitration would, at best, be awkward, in light of their mutual exclusiveness and independence and their various differences. *Gordon* asserts that such "consolidation" is not thereby "prevent[ed]." (*Gordon v. G.R.O.U.P., Inc., supra,* 49 Cal.App.4th at p. 1007, fn. 13.) The

question, however, is whether it is *authorized*. That may be left to another day.

## V

For the reasons stated above, we conclude that we must reverse the judgment of the Court of Appeal and remand the cause to that court with directions to affirm the order of the superior court denying Mercury's motion for separate judicial arbitration and contractual arbitration.

It is so ordered.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.