Filed 10/5/15  Vargas v. County of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROY TORIVIO VARGAS et al., | B257371 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC480493) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed in part; reversed in part.

Benbrook Law Group, PC, Bradley A. Benbrook and Stephen M. Duvernay for Plaintiffs and Appellants.

Mark J. Saladino, County Counsel, Jennifer A.D. Lehman, Assistant County Counsel, Edward L. Hsu and Alexandra Zuiderweg, Deputy Attorneys General, for Defendants and Appellants.

* * * * * *

Absent a license or other exemption, it is illegal to carry a concealed weapon. (Pen. Code § 25400.)[1] Both the sheriff of a county and the chief of a municipal police department have discretion to issue a license to carry a concealed weapon when the applicant satisfies statutory requirements. (§§ 26150, 26155.) The police chief and sheriff use uniform applications (§ 26175), apply uniform criteria for evaluating applications (§§ 26150, 26155), and are guided by a uniform time period for deciding whether to issue a license (§ 26205).

This case concerns the following concealed weapon license policy (Policy) issued by the Los Angeles County Sherriff's Department (Department): "If the applicant resides in an incorporated city, which is not policed by our Department, he or she must first apply to the Chief of Police of their [*sic*] city of residence for a CCW [(concealed weapon)] license and have the application acted upon. Within 60 days <u>after a denial</u> of the application, the city resident may file a separate application with the . . . Department, <u>attaching a copy</u> of the application denied by the Chief of Police. The Sheriff will exercise independent discretion in granting or denying licenses to these applicants. Further, the Sheriff may review, consider, and give weight to the grounds upon which the previous denial was made."

Another court has held that a similar policy does not violate equal protection principles, concluding that "[t]he classification here—between residents of municipalities, and other County residents—also is supported by a rational basis. Cities in Contra Costa County have a legitimate interest in regulating the issuance of concealed weapons licenses. The County has the same interests. When a citizen is in the jurisdiction of both of these entities, it is only proper that such an individual be subject to the police powers of each, just as citizens of the United States have been subject to both state and federal legislation for more than 200 years. The Sheriff's Policy's limited deference to municipal governments also promotes comity between the County and its municipalities. Finally, in light of the County's willingness to

---

[1]     Undesignated statutory citations are to the Penal Code.

2

consider applicants that a city has denied or failed to respond to, city residents are at a comparative *advantage* relative to citizens not living in a municipality. Whereas other County residents get only one chance to apply for a concealed weapons license, the city residents may receive two opportunities." (*March v. Rupf* (N.D. Cal. 2001) 2001 WL 1112110, *4.)

Here, the trial court concluded that the Policy violated California law and issued a writ of mandate directing the Los Angeles County Sheriff (Sherriff) to consider all applications including those from a resident of an incorporated city that does not contract with the Department. The trial court denied the plaintiffs' request for attorney fees.

Finding no statute or case prohibits the Policy, we reverse the judgment with directions to the superior court to vacate the writ of mandate entered April 29, 2014, and enter a new judgment denying the petition for writ of mandate. In the cross-appeal, we affirm the order denying plaintiffs' requested attorney fees.

### FACTS AND PROCEDURE

Jennifer Lynn Lu, Sean Allen Lu, Roy Torivio Vargas, Michael Saulibio and the Calguns Foundation, Inc., sued the County of Los Angeles (County), the Department and former Sheriff Leroy B. Baca in his individual capacity and his official capacity. (The Lus eventually were dismissed from the case apparently because they relocated.) Plaintiffs alleged that they were residents of the following cities, which did not contract with the Department for services: San Gabriel, Monterey Park, and Alhambra. In the operative complaint, Calguns Foundation, Inc., identified itself as "dedicated to . . . defending and protecting the civil rights of law-abiding California gun owners." Further, according to the operative complaint, plaintiffs' applications to the Sheriff for a concealed weapon license were not considered because they did not first apply to the chief of police in the city where they resided. It is undisputed that the Sheriff has the above-quoted Policy requiring applicants who live in cities that do not contract for services with the Department to apply to the applicant's municipal police chief for a concealed weapon license.

3

In its motion for summary judgment and in its opposition to plaintiffs' petition for writ of mandate, the County argued that "City police chiefs are in a better position to know the crime trends of their cities, what problems could be created by the issuance of a CCW license to its residents, and what resources are available to obviate the needs for a CCW permit. This is why counties throughout California maintain this same requirement . . . ." County further argued that the Sheriff's policy promotes comity between jurisdictions.

Jim Smith, the police chief for the City of Monterey Park, provided a declaration testifying that "it is in the public interest that residents of my City first apply to my Department for a CCW permit." "As the Chief of Police, I am responsible for the police services provided in Monterey Park. In that capacity, I am familiar with the residents of my City, crime trends within my City, characteristics of areas within my City and specific locations and situations in my City that may require special attention and criminal investigations being conducted in my City. I am also familiar with resources my Department is able to allocate to prevent crime and alleviate the need for private citizens to carry concealed weapons." Chief Smith further declared: "While the Sheriff of Los Angeles County is authorized to issue CCW permits in Los Angeles County, I appreciate and value that the Sheriff requires a CCW permit applicant who resides in my City to first apply with my Department. It promotes comity between our Departments, and gives me the opportunity to assess whether a resident of Monterey Park meets the good cause requirement in the context of police services provided by my Department prior to bringing a concealed handgun into my City."

In support of their petition for writ of mandamus, plaintiffs argued *Salute v. Pitchess* (1976) 61 Cal.App.3d 557, 560-561 (*Salute*), required the Sheriff to consider every application without initially deferring to any chief of police. Plaintiffs argued that the Policy required an additional application in contravention of section 26175, subdivision (g).

4

The trial court found plaintiffs' arguments persuasive. Relying heavily on *Salute, supra*, 61 Cal.App.3d 557, the trial court concluded that the Policy violated state law because the Sheriff was refusing to consider applications by persons living in incorporated cities. The court concluded the Policy was "arbitrary" because the Sheriff did not consider the applications until after the applicant had applied to the local police chief.

The trial court issued a writ of mandate directing that "Defendants . . . cease their policy, practice and conduct of requiring all applicants who are from, or reside in, incorporated cities within the County of Los Angeles to apply to the chief of police of their city of residence for a license to carry a concealed weapon, and be denied by that chief of police, before Defendants will consider an application from the applicants for a license to carry a concealed weapon . . . ." The court further ordered defendants to review all applications for licenses to carry a concealed weapon.

Plaintiffs dismissed their causes of action for declaratory relief and violation of equal protection. The court denied plaintiffs' requested attorney fees.

Defendants appealed from the issuance of the writ of mandate. Plaintiffs cross-appealed from the denial of their requested attorney fees.

## DISCUSSION

"'"A writ of mandate will lie to "compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station" (Code Civ. Proc., § 1085) "upon the verified petition of the party beneficially interested," in cases "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) The writ will issue against a county, city or other public body or against a public officer. [Citations.] However, the writ will not lie to control discretion conferred upon a public officer or agency. [Citations.] Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty[.]'" (*California*

*Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96 Cal.App.4th 824, 827.)

"'In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections, supra*, 96 Cal.App.4th at p. 827.) Here, it is undisputed that the Sherriff has implemented the Policy with respect to plaintiffs. Whether the Policy violates California law is a question of law, which we review de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.)

### 1. California Statutes Do Not Prohibit the Policy

The California Penal Code authorizes both the sheriff of a county and the police chief of a city to issue the concealed weapon licenses. Section 26150 provides: "(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: [¶] (1) The applicant is of good moral character. [¶] (2) Good cause exists for issuance of the license. [¶] (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. [¶] (4) The applicant has completed a course of training as described in Section 26165."

Section 26155 provides: "(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following: [¶] (1) The applicant is of good moral character. [¶] (2) Good cause exists for issuance of the license. [¶]

(3) The applicant is a resident of that city.  [¶]  (4) The applicant has completed a course of training as described in Section 26165."

Subdivision (c) of section 26155, which plaintiffs emphasize, provides: "*Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter*."  (Italics added.)

Based on the italicized language, plaintiffs argue that the rule of statutory construction *expressio unius* requires interpreting sections 26150 and 26155 to conclude that the Legislature permitted "the head of a municipal police department to transfer (by agreement) its authority to issue concealed-carry licenses to the county sheriff, but the Legislature gave no similar authority for the sheriff to transfer that authority in the opposite direction—to the local police."  To support this argument, plaintiffs cite *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 (*Gikas*), in which our high court considered whether the acquittal of a criminal charge of driving under the influence barred a subsequent administrative proceeding on the same grounds.  (*Ibid*.) The court looked to prior versions of the governing statute to determine whether the Legislature intended to bar an administrative proceeding after a criminal proceeding. (*Ibid*.)  Although the first version of the bill stated that "*neither* the criminal *nor* the administrative proceeding would have any effect on the other," the final version provided that "an 'acqutt[al]' of criminal charges *does* preclude the administrative sanction."  (*Ibid*.)  Our high court explained that, because the Legislature considered and rejected the provision that the criminal prosecution would not bar a subsequent administrative proceeding, "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed."  (*Ibid*.)

The principle that the "expression of some things in a statute necessarily signifies the exclusion of other things not expressed" applies "'only when the Legislature has intentionally changed or excluded a term by design.'"  (*Silverbrand v.*

7

*County of Los Angeles* (2009) 46 Cal.4th 106, 126.) "The rule is inapplicable: where no manifest reason exists why other persons or things than those enumerated should not be included and thus exclusion would result in injustice [citation]; to a statute the language of which may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature [citation]; to a matter which is only incidentally dealt with in a statute [citation]; where its application would run counter to a well established principle of law [citations]." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539, fn. 10.)

Applying these principles here, the Senate bill, which that led to the codification of sections 26150 and 26155, reflects no Legislative intent to preclude the Sheriff from deferring to a police chief. (The bill was introduced, amended twice, enrolled and chaptered.) In contrast to *Gikas*, plaintiffs cite no legislative history supporting their contention that the Legislature intended to preclude a sheriff from deferring to a police chief in an area policed by the police chief. They cite no statutory language supporting their assertion that the Legislature intended to allow "citizens the choice of either applying to their local sheriff or chief of police" rather than allowing the sheriff and chief of police to decide to whom an applicant shall apply when the applicant lives in the jurisdiction of both a police chief and sheriff. Plaintiffs' unsupported assertion is not persuasive because neither the relevant statutes nor their history expressly state or implicitly suggest that the Legislature intended to preclude the Sheriff from deferring to the police chief in an area where services are provided by the police chief.

Moreover, the italicized language—the only statutory language relied on by plaintiffs—cannot reasonably be understood to reflect a Legislative prohibition on the Sheriff from deferring to a municipal police chief. According to the statute, "[n]othing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications . . . ." (§ 26155, subd. (c).) Thus, the Legislature has made its interpretation of the chapter clear: the statutes do not

8

prohibit an agreement for the sheriff to process all applications. But just as no statute precludes an agreement for a sheriff to process all applications, similarly no statute precludes the police chief from processing applications in the method identified in the Policy. Plaintiffs cite no authority supporting their argument that the phrase "[n]othing . . . shall preclude" one agreement (i.e., for the Sheriff to process applications) is or should be understood to preclude a different agreement (i.e., for the police chief to process applications). Had the Legislature intended to preclude an agreement such as that reflected in the Policy it could have so stated.

No other statutory requirement is potentially violated by the Policy. Both the sheriff and police chief are required to have a uniform application. (§ 26175.) Neither the sheriff nor the police chief can require an additional application. (§ 26175, subd. (g).) Further both are required to issue a written decision within 90 days of the initial application or 30 days of the receipt of the applicant's criminal background check, whichever is later. (§ 26205.) Both are required to provide notice of the reason for the denial of a license. (§ 26205.) Plaintiffs were not required to submit two applications unless they sought review by the Sheriff of the police chief's determination, which as the *March* court noted placed residents of a City at a comparative advantage because "[w]hereas other County residents get only one chance to apply for a concealed weapons license, the city residents may receive two opportunities." (*March v. Rupf, supra*, 2001 WL 1112110, *4.) In sum, plaintiffs fail to show the Policy conflicts with the statutes governing licenses to carry concealed weapons.

### 2. *California Case Law Does Not Prohibit the Policy*

We now turn to plaintiffs' principal argument that *Salute, supra*, 61 Cal.App.3d 557 prohibits the Policy. In *Salute*, the appellate court considered a predecessor to section 26150. (*Salute*, at p. 559.) The sheriff had a fixed policy to deny concealed weapons licenses except to judges and public office holders. (*Id*. at p. 560.) The appellate court found such policy conflicted with the sheriff's statutory requirements. "To determine, in advance, as a uniform rule, that only selected public officials can show good cause is to refuse to consider the existence of good cause on the part of

9

citizens generally and is an abuse of, and not an exercise of, discretion." (*Ibid.*) The court further held that "[i]t is the duty of the sheriff to make such an investigation and determination, on an individual basis, on every application . . . ." (*Id*. at pp. 560-561.)

Plaintiffs argue this case is similar to *Salute* because the Sheriff refused to consider their applications on the merits unless they first applied to the local police chief. According to them, *Salute* requires that the Sheriff evaluate whether there is good cause for each application submitted to it regardless of the applicant's residency in an incorporated city.

The most important distinction between this case and *Salute* is that plaintiffs had the opportunity for their applications to be considered by their police chiefs, who were authorized to grant licenses. In *Salute*, the court was concerned applicants who were not judges or other public officials would have *no* chance of obtaining licenses because the sheriff would not consider whether they could show good cause. (*Salute, supra*, 61 Cal.App.3d at pp. 560-561.) Whereas the policy in *Salute* prevented any review of an application, the Policy here simply identifies the decision maker for residents of cities who do not use the Department. In contrast to the policy in *Salute*, the Policy here not only requires review but permits review by both a police chief and the Sheriff. *Salute* therefore does not prevent the Policy.[2]

### 3. Attorney Fees

Because we conclude the writ of mandate was improvidently granted, plaintiffs no longer are the prevailing party. Therefore they are not entitled to attorney fees and the court's order denying such fees must be affirmed.

---

[2]      *Salute* considered neither whether the sheriff could defer to a police chief nor whether relevant statutes prohibit the policy. "A decision, of course, is not authority for what it does not consider." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348.)

10

## DISPOSITION

The judgment issuing a writ of mandate is reversed.  The trial court is directed to enter a new judgment denying the petition for writ of mandate.  The order denying attorney fees is affirmed.  The parties shall bear their own costs on appeal.


FLIER, Acting P. J.

WE CONCUR:


GRIMES, J.


OHTA, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11