[No. A069452. First Dist., Div. Two. Sept. 27, 1996.]

ANTHONY GORDON et al., Plaintiffs and Respondents, v.
G.R.O.U.P., INC., Defendant and Appellant;
PARATRANSIT INSURANCE CORPORATION, Appellant.

1000

COUNSEL

St. Clair, McFetridge, Griffin & Legernes, Bruce Legernes and Gay L. Gough for Defendant and Appellant and for Appellant.

Cheasty, Davis & Pollack, Robert C. Cheasty and Kim R. Tulsky for Plaintiffs and Respondents.

OPINION

PHELAN, J.*—Respondents Anthony Gordon, Dan Jackson, George King, James Rudisill, Lonnie Williams, and Taruk Ben-Ali (respondents), filed suit against Melvin Johnson (Johnson), G.R.O.U.P., Inc. (GROUP), and Herman Sally, Jr. (Sally), for personal injuries sustained in a motor vehicle accident. In this appeal, GROUP and its uninsured motorist carrier, Paratransit Insurance Corporation (hereinafter, collectively, appellants), seek review of an order and judgment confirming an arbitrator's award of damages, plus statutory and arbitration costs, in favor of respondents. GROUP and Paratransit contend that the trial court erred by denying GROUP's request for a trial de novo after a "combined" arbitration of respondents' claims pursuant to statutes which require, respectively, judicial arbitration for claims under $50,000 (Code Civ. Proc., § 1141.10 et seq.),[1] and contractual arbitration for claims under the uninsured motorist provisions of GROUP's insurance policy (Ins. Code, § 11580.2).

We conclude that the trial court acted within its authority and discretion when it ordered the parties to proceed simultaneously with the judicial arbitration and the uninsured motorist arbitration before a court-appointed arbitrator, and correctly concluded that the arbitrator's award under GROUP's uninsured motorist coverage is binding on appellants. Accordingly, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are very simple, and essentially undisputed. On December 24, 1991, respondents were passengers in a van driven by Sally and owned by GROUP. As Sally backed the van into the street, it was hit by a Chevrolet Camaro, which was owned by Johnson. Johnson was not insured and the driver of Johnson's car, who had allegedly stolen the vehicle, was never identified after fleeing the scene of the accident. Respondents incurred medical expenses ranging from $1,255 to $3,500, and claimed wage loss as a result of the incident. GROUP was either self-insured or insured by Paratransit. Sally was insured through GROUP, and ultimately recovered benefits pursuant to GROUP's uninsured motorist coverage.

---

*Presiding Justice of the Court of Appeal, First District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

The procedural history of the case is far more complicated. Respondents' first amended complaint was filed on December 22, 1992, against GROUP (for negligently training or supervising Sally as a driver), Sally (for negligent operation of the van), Johnson (for negligent operation or entrustment of the Camaro), and the Camaro driver (as a Doe defendant). GROUP and Sally filed a joint answer to the main complaint denying liability, and a cross-complaint against Johnson and the Camaro driver for indemnity and property damage. Sally also retained separate counsel, John McDougall, to proceed on a cross-complaint against GROUP, Johnson and the Camaro driver for personal injuries, indemnity, and property damage. Because of the conflict between GROUP and Sally, GROUP initially had two sets of attorneys in the proceedings below, as follows: Walter K. Dods, to defend GROUP and Sally on the main complaint and to prosecute the cross-complaint against Johnson and the Camaro driver; and Patricia M. Fama, of St. Clair, McFetridge & Griffin (the St. Clair law firm), to defend GROUP against the uninsured motorist claims alleged in Sally's cross-complaint.[2] The St. Clair law firm represents appellants GROUP and Paratransit in this appeal.[3]

On May 21, 1993,[4] the trial court issued an order to show cause for failure to follow the local rules.[5] In response to the order to show cause, GROUP (through Ms. Fama) argued that Sally was making an uninsured motorist claim, and should do so only in a "binding arbitration between [GROUP] and Sally under the provisions of the Insurance Code." "In order to invoke the provisions of Insurance Code Section 11580.2," Ms. Fama continued, "Sally need only demand arbitration." However, Ms. Fama objected to a "combined" arbitration of respondents' complaint and Sally's cross-complaint.

On June 14, the court notified the parties that the case had been assigned to judicial arbitration, and sent a list of proposed arbitrators. The hearing in the judicial arbitration was set for August 12.

On July 23, GROUP (through Ms. Fama) moved for judgment on the cross-complaint or, in the alternative, to sever Sally's cross-complaint and

[2]Appellants have taken inconsistent positions on the role the St. Clair law firm was to play in this litigation. In the trial court, Ms. Fama and Mr. Molinelli asserted that their firm represented GROUP only with respect to Sally's cross-complaint. However, in a letter brief to the trial court in response to respondents' motion to confirm the arbitrator's award Bruce Legernes (who is now lead appellate counsel for appellants) appeared to argue that his firm represented GROUP with respect to all uninsured motorist issues.

[3]Paratransit "joined the appeal" because it was named in the judgment.

[4]All further dates mentioned in this section are in 1993, unless otherwise indicated.

[5]Respondents had not taken a default against Johnson, who had failed to appear in the action. Sally requested entry of Johnson's default prior to the arbitration, and GROUP requested entry of his default after the arbitration. Johnson's default was entered as to Sally on October 22, 1993, and as to GROUP on May 4, 1994.

compel arbitration of the cross-action under Insurance Code section 11580.2. In this latter regard, Ms. Fama asserted that GROUP is "self-insured." Respondents opposed GROUP's motion, suggesting that the court instead hold a case management conference or order the following: "[A] single arbitration [to] be held to determine all issues, including settling and awarding recovery (if any is found supported) under either theory, i.e., whether this is an uninsured-motorist claim against [GROUP,] or whether it is an action against [GROUP] and its driver, [Sally]. The matter, if found to be properly an uninsured-motorist claim, will produce a binding result, otherwise not." On August 5, GROUP (through James P. Molinelli of the St. Clair law firm) objected to respondents' suggestion, arguing that the combined arbitration of uninsured motorist and third party liability issues would be a "procedural oddity," but that GROUP's motion for severance and to compel arbitration of Sally's cross-complaint had "absolutely *no effect*" on the main action. On August 6, before the court could rule on GROUP's motion, Sally voluntarily dismissed his cross-complaint against GROUP.

The parties thereafter stipulated to remove the case from the arbitration calendar and requested a case management conference, which was scheduled for October 1. In their case management conference statement, respondents requested a combined arbitration of their uninsured motorist claims and their claims of third party (Sally's) negligence.[6] In a joint response, GROUP and Sally said they had no objection to an uninsured motorist arbitration, but argued through Mr. Dods that respondents should choose whether to litigate their claims under either an uninsured motorist theory or a third party liability theory. Ms. Fama did not respond to the respondents' request and, instead, asked to be removed from the court's service list on the theory that GROUP was no longer a cross-defendant because of the dismissal of Sally's uninsured motorist claim. At the case management conference, which was held on October 15, the court granted Ms. Fama's request to be relieved of further appearances in this action.

On November 4, respondents petitioned the court to order a combined arbitration of their claims pursuant to section 1141.10 et seq., and California Rules of Court, rule 1600 (judicial arbitration), and Insurance Code section 11580.2 (binding uninsured motorist arbitration). Mr. Dods objected to such an arbitration, in which the respondents would proceed under both uninsured motorist and third party liability theories, because that "would allow plaintiffs to proceed on one theory where an unfavorable decision may be

---

[6]Respondents also suggested that Sally's severed cross-complaint be "rejoined" with the main action. But it does not appear respondents' request was granted in this respect, because Sally's cross-complaint was adjudicated by an American Arbitration Association (AAA) arbitrator on April 13, 1994, resulting in a decision in favor of Sally.

rendered and then allow them to present their case a second time." However, Mr. Dods acknowledged that the matter was "suitable for arbitration" and, indeed, argued on behalf of GROUP and Sally that an order "[r]equiring plaintiffs to proceed under the uninsured motorist arbitration" statute would solve the procedural problem presented.[7] Mr. Dods raised no objection to the forum, the arbitrator, or any other procedural aspect of the proposed arbitration proceedings. Although she was served with respondents' petition to compel arbitration, neither Ms. Fama nor any other attorney from the St. Clair law firm filed a written response.

After a hearing on November 29, the trial court granted the respondents' petition to compel arbitration and ruled, in relevant part, as follows: "It Is HEREBY ORDERED THAT this matter, per plaintiffs' election for arbitration under Rules of Court, Rule 1600 and Code of Civil Procedure sections 1141.10 *et seq.* [*sic*] and Insurance Code section 11580.2, that arbitration under all code sections shall be combined and held before a single arbitrator simultaneous [*sic*] for purposes of judicial economy and to avoid the possibility of inconsistent results from multiple forums. This is done pursuant to Alameda County Superior Court Rules, [r]ule 4.12(n) which provides authority for orders as appropriate for expediting adjudication for the case." As far as this record discloses, no party sought review of this order compelling arbitration.[8]

The court-ordered arbitration was held on March 31, 1994. The arbitrator found that, although she had notice of the proceedings, Ms. Fama "objected to the hearing going forward on issue of uninsured motorist claims and Third Party claim," and elected not to appear.[9] However, Mr. Dods did appear on behalf of GROUP and Sally. On April 8, 1994, the arbitrator filed an award of damages in favor of respondents and against "[GROUP] under its uninsured motorist coverage," and found "no fault" as to Sally and "[n]o evidence of liability" as to Johnson. Implicit in this award is a finding that the driver of the Camaro was wholly responsible for the accident that injured respondents. Respondents were also awarded statutory and arbitration costs.

---

[7]Citing *Jordan* v. *Pacific Auto Ins. Co.* (1965) 232 Cal.App.2d 127 [42 Cal.Rptr. 556], Mr. Dods explained: "The arbitrator in an uninsured motorist action has the authority to decide all issues including liability, injury, proximate cause and uninsured motorist coverage."

[8]Although an order granting a motion to compel arbitration is not appealable (see *State Farm Fire & Casualty* v. *Hardin* (1989) 211 Cal.App.3d 501, 506 [259 Cal.Rptr. 433] [appeal lies only from the ultimate judgment confirming the arbitration award]), immediate review of such an order may be obtained by filing a petition for writ of prohibition (*International Film Investors* v. *Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 704 [199 Cal.Rptr. 690]).

[9]Apparently, Ms. Fama called respondents' counsel approximately 10 days before the arbitration to tell him she would not be attending. The record further indicates that the arbitrator and Ms. Fama discussed the proceedings, and that she said she would not be in attendance.

After declining to appear at the arbitration, Ms. Fama filed a request on behalf of GROUP for trial de novo of respondents' "claims for uninsured motorist benefits," purporting to do so under the judicial arbitration statutes. Both respondents and Mr. Dods expressly declined to request a trial de novo on the third party liability aspects of the arbitrator's award. Respondents, for their part, filed a motion to confirm the arbitrator's award on the theory that it was the product of a binding uninsured motorist arbitration. At the trial court's request, Mr. Legernes of the St. Clair law firm filed a statement in opposition to respondents' motion to confirm the arbitrator's award.

On August 3, 1994, the trial court confirmed the arbitration award, as amended to correct the designation of one respondent's name, pursuant to sections 1286 and 1287. GROUP's request for trial de novo was stricken as "unauthorized," and judgment was entered for respondents and against GROUP and Paratransit on February 2, 1995. On March 29, 1995, GROUP and Paratransit timely filed a notice of appeal from this judgment, including the order confirming the arbitrator's award.

## II. DISCUSSION

■ Appellants do not dispute that respondents' uninsured motorist claims were subject to binding arbitration under Insurance Code section 11580.2.[10] (*Goulart* v. *Crum & Forster Personal Ins. Co.* (1990) 222 Cal.App.3d 527, 530 [271 Cal.Rptr. 627] (*Goulart*) [no right to trial de novo after uninsured motorist arbitration]; *Chrisman* v. *Superior Court* (1987) 191 Cal.App.3d 1465, 1469 [236 Cal.Rptr. 703] [same].) Such a proceeding may be compelled by court order if, as here, the claimant's demand for arbitration is rejected. (§ 1281.2; Ins. Code, § 11580.2, subd. (f); see also 2 Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 1995) ¶ 7:298 et seq., pp. 7-66.11 to 7-66.13.) Appellants also acknowledge that respondents' third party liability claims against GROUP and Sally, and GROUP's claims against Johnson, were subject to mandatory—albeit nonbinding—arbitration under the so-called "judicial arbitration" statutes. (§ 1141.11, subd. (a) [requiring arbitration of actions, not otherwise exempt, in which "the amount in controversy in the opinion of the court will not exceed fifty thousand

---

[10]Respondents were passengers in the insured vehicle and, thus, "additional insureds" under the uninsured motorist provision. As such, and as Mr. Dods repeatedly argued, respondents were entitled to proceed with an uninsured motorist arbitration of their claims for bodily injury. (Ins. Code, § 11580.2, subd. (b); see also *Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].) As far as this record reveals, there was no question that respondents were present in the vehicle with the named insured's express or implied consent.

dollars ($50,000) for each plaintiff"]; Cal. Rules of Court, rules 1600, 1600.5.)[11]

Appellants argue, however, that the trial court did not have the authority or discretion to order the "combined" arbitration which occurred in this case.[12] We disagree. Under section 1281.3: "[T]he court may order consolidation of separate arbitration proceedings when: [¶] (1) Separate arbitration *agreements or proceedings* exist between the same parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and [¶] (2) The disputes arise from the same transactions or series of related transactions; and [¶] (3) There is common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators." (Italics added.) ■ "By adopting section 1281.3, California has manifested a strong policy favoring consolidating arbitrations involving common issues of law and fact. There are at least three important aims of this policy: the efficient settling of private disputes, judicial economy, and the avoidance of contrary results." (*Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co.* (1983) 140 Cal.App.3d 251, 262 [191 Cal.Rptr. 15].) A consolidation under section 1281.3 may be ordered even if it means "a party may be forced into a coordinated arbitration proceeding in a dispute with a party with whom he has no agreement, before an arbitrator he had no voice in selecting, and by a procedure he did not agree to." (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 612 [183 Cal.Rptr. 360, 645 P.2d 1192], revd. in part on other grounds in *Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 5 [79 L.Ed.2d 1, 8-9, 104 S.Ct. 852].)

■ Both the specific requirements of section 1281.3, and the policies underlying its enactment, were satisfied in this case. Arbitration of respondents' uninsured motorist claims was required under a contractual provision mandated by section 11580.2 of the Insurance Code, to which appellants and respondents were either parties or third party beneficiaries. (See *Mayflower Ins. Co.* v. *Pellegrino* (1989) 212 Cal.App.3d 1326, 1331-1332 [261 Cal.Rptr.

---

[11]As far as this record discloses, appellants have never contended that the third party liability claims or the cross-claims were "not amenable" to judicial arbitration or otherwise exempt from the mandatory arbitration prescribed by section 1141.10 et seq. and California Rules of Court, rule 1600 et seq.

[12]We note that the "combined" arbitration involved only the claims asserted by respondents in their complaint against GROUP and Sally, and the claims asserted by GROUP in its cross-complaint against Johnson, who did not appear in the court action or at the arbitration. By the time the arbitration was held, Sally had dismissed his cross-complaint against GROUP in order to pursue binding uninsured motorist arbitration before an AAA arbitrator, and Ms. Fama had asked to be removed as counsel of record for GROUP. The AAA arbitration was concluded in favor of Sally in April 1994, and the judgment entered upon the arbitrator's award was satisfied. As we have noted, Sally had also requested and obtained entry of Johnson's default on his cross-complaint.

224].) In addition to this "arbitration agreement[]," all the parties to the court action were required to participate in "separate arbitration . . . proceedings" under the court's orders pursuant to section 1141.10 et seq.[13] Moreover, it is beyond cavil that the parties' disputes arose "from the same transaction[]" and involve "common issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator . . . ." Once the enumerated criteria have been satisfied, there is no reason to deny consolidation under section 1281.3, unless it would impair a substantial right or obligation of a party to the applicable arbitration agreements. (*Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co, supra,* 140 Cal.App.3d at p. 264, citing *Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc.* (1980) 111 Cal.App.3d 983, 989-993 [169 Cal.Rptr. 102].)

There is no indication on this record that any "substantial right or obligation" of the appellants was impaired by the trial court's order consolidating the uninsured motorist and judicial arbitrations.[14] Appellants had ample notice that the "combined" arbitration was being ordered under the authority of Insurance Code section 11580.2 and section 1141.10. They also had notice that the arbitration would be conducted before an arbitrator selected under procedures applicable to judicial arbitrations, and raised no objection to the forum, arbitrator, or any other procedural aspect of the court-ordered arbitration.[15] They point to no evidentiary or procedural advantage of private arbitration they lost, or any disadvantage they suffered, by proceeding instead under section 1141.10 et seq. Thus, we conclude that the order compelling the parties to participate in the "combined" arbitration was a proper exercise of the trial court's authority and discretion.

Respondents also cite *Prudential Property & Casualty Ins. Co.* v. *Superior Court* (1995) 36 Cal.App.4th 275 [42 Cal.Rptr.2d 227], in support of their

---

[13]We are cognizant of section 1141.30, which provides: "This chapter shall not be construed in derogation of Title 9 (commencing with Section 1280) of Part 3, and, to that extent, this chapter and that title, other than Section 1280.1, are mutually exclusive and independent of each other." However, we do not read that section as preventing consolidation of a judicial and contractual arbitration, such as occurred in this case. We are not construing the judicial arbitration provisions "in derogation of" the contractual arbitration statutes. If anything, the trial court's decision to combine the contractual (uninsured motorist) and judicial (third party liability) arbitrations facilitated an early resolution of the claims that were subject to contractual arbitration, which could otherwise have been delayed or stayed pending completion of the court proceedings on the third party liability claims. (§ 1281.2, subd. (c).)

[14]There is no merit to appellants' argument that the trial court ordered "binding arbitration" of claims that were not subject to binding arbitration. Rather, the court ordered *parallel* arbitration proceedings under Insurance Code section 11580.2 and the judicial arbitration statutes. The court made no ruling on the binding effect of the arbitrator's award until after the combined arbitration was completed.

[15]Thus, except for their contention that the arbitrator's award cannot be deemed binding, appellants have waived any further objection to the arbitration procedures employed in this case.

argument that the trial court properly ordered joinder of the third party liability claims with the related uninsured motorist claims in order to prevent inconsistent rulings. *Prudential* does not advance respondents' cause. That case merely interprets section 1281.2, subdivision (c)(1), to hold that a court may *decline enforcement* of an arbitration agreement, specifically one contained in a uninsured motorist provision, where there is a related dispute involving defendants who are not party to the insurance agreement and there is a danger of "conflicting rulings" in the judicial and arbitral fora. (*Prudential Property & Casualty Ins. Co.* v. *Superior Court, supra*, 36 Cal.App.4th at pp. 278-279.) Under *Prudential*, it would have been appropriate to order the joinder *in superior court* of respondents' arbitrable uninsured motorist claims with the other causes of action between and among the respondents, Johnson, Sally and GROUP, that were not subject to Insurance Code section 11580.2. But that is not what happened in this case. Here, the court ordered *enforcement* of the arbitration agreement contained in the uninsured motorist provision, and *consolidation* of the contractual arbitration with a statutorily prescribed judicial "arbitration . . . proceeding." As we have discussed, section 1281.3 authorizes such a consolidation order.

■ We turn next to appellants' contention that the trial court erred when it found the arbitrator's award to be binding on them and refused to order a trial de novo. Again, we must disagree. Appellants recognize that there is no right to a trial de novo of an award emanating from an uninsured motorist arbitration. (*Chrisman* v. *Superior Court, supra*, 191 Cal.App.3d at p. 1469; *Goulart, supra*, 222 Cal.App.3d at p. 530.) Appellants simply contend that the arbitration below cannot be deemed an uninsured motorist arbitration because such a proceeding is available only for resolution of disputes between insurer and insured. (*Mayflower Ins. Co.* v. *Pellegrino, supra*, 212 Cal.App.3d at pp. 1333-1335; § 1281.2.) Parsing appellants' argument, it appears to contain two objections: that the "proper parties" defendant were not present at the arbitration, and that Paratransit cannot be bound by an award entered after an arbitration to which it was a stranger. We reject both of these arguments and conclude that the trial court properly denied appellants' request for a trial de novo.

In the first place, it is possible to find on this record that GROUP was *itself* the proper "insurer" defendant for purposes of respondents' uninsured motorist claims. Ms. Fama had previously represented to the court that GROUP was "self-insured" for purposes of Sally's uninsured motorist claim. She had also argued that Sally's uninsured motorist claim had to be resolved in a "binding arbitration *between* [GROUP] *and Sally* under the provisions of the Insurance Code." Furthermore, neither Ms. Fama nor Mr. Dods ever

objected to the "combined" arbitration proceeding on the ground that GROUP was not the proper party defendant for an uninsured motorist arbitration. In these circumstances, we will not disturb the judgment on the basis of some undisclosed relationship between GROUP and Paratransit that would have required its presence—in addition to that of GROUP—at the "combined" arbitration.

Even if Paratransit was, in fact, GROUP's "uninsured motorist insurer," we see no reason to upset the arbitration award and judgment entered thereupon. It is, of course, true that Paratransit was not served and did not appear in the court action. It is also true that the St. Clair law firm had been relieved as counsel of record for GROUP with respect to the uninsured motorist issues raised in Sally's cross-complaint when the trial court issued its order to compel arbitration. As the trial court found, however, it is irrelevant whether appellants were parties to the civil action when the trial court ordered the matter to arbitration. Both sets of counsel for appellants— Mr. Dods for GROUP, and the St. Clair law firm for GROUP and Paratransit—had actual notice of the arbitration proceedings, and a full and fair opportunity to present whatever defenses were available to appellants with respect to respondents' uninsured motorist and third party liability claims.[16] In fact, although Ms. Fama declined to participate, GROUP actually appeared in the "combined" arbitration, represented by Mr. Dods.[17] The parties point to nothing in the record indicating that Mr. Dods was unable or unwilling to carry out his duty to defend GROUP against the claims adjudicated in the arbitration.

Furthermore, appellants have not demonstrated they were prejudiced by the trial court's orders in this case.[18] If the trial court had granted Mr. Dods's request (as counsel for GROUP and, perhaps, for Paratransit) for an order "requiring plaintiffs to proceed under the uninsured motorist arbitration" and, presumably, staying the balance of the civil action (see § 1281.2, subd. (c)(3)), the result would have been exactly the same as found by the trial court: The arbitrator's award on the uninsured motorist claims would have effectively barred any further litigation between or among the parties to the

---

[16] There is also record evidence indicating that Mr. Dods was acting as counsel for Paratransit in this case.

[17] We recognize that a party cannot be denied a trial de novo simply because it refused to participate in a judicial arbitration. (*Lyons* v. *Wickhorst* (1986) 42 Cal.3d 911, 919 [231 Cal.Rptr. 738, 727 P.2d 1019].) However, to the extent her presence may have been required in addition to Mr. Dods's to adequately represent appellants, Ms. Fama was not free to ignore the uninsured motorist arbitration proceedings, as to which there was no right to trial de novo.

[18] If anything, the court-ordered arbitration under judicial arbitration procedures eliminated or reduced certain costs the appellants would have incurred if they had proceeded with a separate arbitration. (See § 1141.28, subd. (a).)

civil action. Specifically, the arbitrator found, as a matter of fact, that the Camaro driver was entirely at fault in the accident, and that neither Johnson nor Sally (nor GROUP as the entity that trained and supervised Sally as a driver) could be held liable for any part of respondents' injuries. To the extent that was a finding on the uninsured motorist claim, it meant the respondent insureds were entitled to recover under the uninsured motorist coverage, and that no damages could be assessed against Johnson, Sally or GROUP, except insofar as the latter party is a self-insurer. (See *Furlough* v. *Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 45 [249 Cal.Rptr. 703] [arbitration under Ins. Code, § 11580.2 is intended to determine whether insured is entitled to recover against an uninsured motorist].) At a minimum, these express and implied findings were binding on appellants. (*Goulart, supra,* 222 Cal.App.3d at p. 530; *Chrisman* v. *Superior Court, supra,* 191 Cal.App.3d at p. 1469; see also *Thibodeau* v. *Crum* (1992) 4 Cal.App.4th 749, 755 [6 Cal.Rptr.2d 27]; and see generally, Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1995) ¶¶ 5:542-5:543, p. 5-139 [collateral estoppel effect of arbitrator's award].) And to the extent it was a finding on GROUP's cross-complaint, the arbitrator's finding had no more or less effect than did the default GROUP obtained against Johnson.[19]

Finally, citing *Austin* v. *Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812 [21 Cal.Rptr.2d 56], appellants argue—for the first time on appeal—that "statutory and arbitration costs" are not recoverable in a uninsured motorist arbitration, and that the arbitrator's award of such costs was unauthorized. (*Id.* at pp. 1814-1817; see also §§ 1284.2, 1293.2.) Although appellants may be correct on the law, their argument comes too late. ■ Statutory grounds for correction of an arbitrator's award cannot be asserted for the first time on appeal from the judgment confirming the award. (*Knass* v. *Blue Cross of Calif.* (1991) 228 Cal.App.3d 390, 393-394 [279 Cal.Rptr. 124].) Accordingly, we conclude that appellants waived any objection to the cost award.

---

[19]Appellants do not explain—and we will not speculate about—their argument that they should be allowed to raise an objection on behalf of Sally to the trial court's finding that Johnson was not responsible for the accident, so as to preclude any recovery by Sally on an indemnity theory. Sally did not seek a trial de novo, undoubtedly because he had no objection to the finding that he was not negligent with respect to the accident. Likewise, Mr. Dods did not seek a trial de novo for GROUP on the third party claims because GROUP was undoubtedly satisfied with the finding that, in light of Sally's exoneration, it was not liable for negligent training or supervision of Sally. Indeed, Ms. Fama did not request a trial de novo on the third party claims or on the cross-complaint. After all, she was not even arguably GROUP's counsel for purposes of those claims.

## III. CONCLUSION

For the foregoing reasons, the judgment is affirmed. Costs to respondents.

Haerle, Acting P. J., and Lambden, J., concurred.