[No. B167028. Second Dist., Div. Six. Jan. 27, 2005.]

GREGORY PARKER, Plaintiff and Respondent, v.
WENDY P. MCCAW, et al., Defendants and Appellants.

## 1496

**COUNSEL**

Sidley Austin Brown & Wood, Carter G. Phillips, Theodore N. Miller, James M. Harris, Anne Mayer Turk; Hollister & Brace and Susan H. McCollum for Defendants and Appellants.

Herb Fox; Foley & Bezek, Thomas G. Foley, Jr., Peter J. Bezek; Davis, Wright & Tremaine and Gary L. Bostwick for Plaintiff and Respondent.

**OPINION**

**GILBERT, P. J.**—Parties seek a court order to resolve their disputes through two arbitration agreements. One agreement provides for one arbitrator, the other provides for three arbitrators. The trial court determines that the issues to be resolved under the agreements are so intertwined that it orders them consolidated and to be decided by a single arbitrator.

Here we hold, among other things, that the contractual right to three arbitrators is substantial and may not be altered by the court.

Defendants Wendy P. McCaw, Ampersand Holdings, Inc., Ampersand Telecom LLC, and Joseph Cole, trustee of the Stanford Farms Trust, appeal a judgment confirming an arbitration award in favor of Gregory Parker.

This lawsuit concerns Parker's employment by Ampersand Holdings, Inc., his compensation, and his dismissal from employment. Two written agreements, an employment agreement and a stock incentive agreement, define Parker's compensation. Each agreement provides for binding arbitration, but the methods of arbitration differ. The trial court ordered the arbitrations consolidated before a single arbitrator, among other things. After eight days of proceedings, the arbitrator awarded nearly $15 million damages to Parker. The trial court entered judgment upon the award and included attorney's fees. Defendants appeal the judgment, and assert that the orders consolidating arbitration before one arbitrator and permitting an award of punitive damages are improper.

We reverse the judgment regarding the stock incentive agreement and the award of overall attorney's fees, but otherwise affirm.

## FACTS

We set forth the factual findings of the arbitrator as necessary to give meaning to the parties' contentions.

In 1995, businesswoman Wendy McCaw moved to Santa Barbara and purchased a beachfront residence in Hope Ranch. During the real property transaction, she met Gregory Parker, an attorney and the managing partner of a Santa Barbara law firm, Seed, Mackall and Cole.

At the time, McCaw was involved in legal proceedings in Washington concerning dissolution of her marriage to entrepreneur Craig McCaw. (The McCaws owned McCaw Cellular, a telecommunications business later acquired by AT&T.) In 1997, the marriage dissolution proceedings concluded, and Wendy McCaw received approximately $500 million in a property settlement, including shares of stock in Nextlink Communications, a Delaware corporation. McCaw later created the entities Ampersand Holdings, Inc. (Holdings) and Ampersand Telecom LLC (Telecom LLC), among others, to hold and manage her assets.

In time Parker and McCaw became romantically involved and eventually engaged to be married. The arbitrator's decision described Parker as McCaw's "financial advisor, lawyer, counselor, good friend and intimate partner."

### The 1997 "Engagement for Services" Agreement

McCaw requested that Parker represent her in certain business and personal matters. He agreed, and drafted a legal employment agreement. On December 21, 1997, they executed an agreement entitled "Engagement for Services," whereby Parker became general counsel and chief operating officer for McCaw and the entities that manage her assets. Parker then left his law practice with the law firm.

Parker had encouraged McCaw to seek independent legal advice prior to executing the employment agreement. McCaw discussed a draft of the legal agreement with Earl Lasher, an attorney who represented her in the Washington dissolution proceedings. Lasher recommended certain changes, to which Parker agreed. The agreement states that McCaw received advice from independent counsel.

*The 1999 "Employment Agreement"*

In 1998, Parker and McCaw decided that the business workload required the employment of an executive vice president and new general counsel. Parker suggested his former law partner, Joseph Cole, for the position. On March 26, 1999, Cole and Holdings executed an employment agreement, effective January 1, 1999. Cole then became executive vice-president and general counsel of Holdings, as well as personal legal advisor to McCaw.

Thereafter, Cole drafted an agreement to "upgrade" the existing employment agreement between Parker and McCaw. This agreement made Parker the president of Holdings and provided him an annual $700,000 salary. It also provided that Holdings could dismiss Parker from employment without cause, but that he would receive 24 months' salary as severance pay. Cole informed McCaw in writing that he would "walk through the [draft] agreement with [her] page by page." In June 1999, Parker and Holdings executed the agreement, entitled "Employment Agreement," effective January 1, 1999. McCaw executed the agreement as chief executive officer of Holdings.

*The Telecom Stock Incentive Agreement*

McCaw had given certain executive officers of Holdings stock equity interests as part of their compensation. In January 1999, she informed Parker that she wanted to provide him an executive compensation plan based upon the appreciation of her shareholdings in Nextlink Communications. (McCaw had nominated Parker as a director of the board of directors of Nextlink.) Parker urged McCaw to obtain independent legal advice.

Between January and March 1999, McCaw met or spoke frequently with accountants from the accounting firm of Moss Adams; general counsel Cole; and attorneys from the law firm of Latham and Watkins, concerning Parker's proposed equity interest. Latham and Watkins prepared 11 drafts of a stock incentive agreement (Telecom Agreement). The Telecom Agreement was derived from the "Eagle River LLC Agreement," created for executives of McCaw Cellular. On March 15, 1999, Cole presented the 27-page agreement to McCaw. Thereafter, he gave the agreement to Parker for his execution and stated that "he [Cole] had explained the document in detail to McCaw." The executed Telecom Agreement had an effective date of February 19, 1999.

The Telecom Agreement contains an attached letter from McCaw to Parker stating that she understood that the California Rules of Professional Responsibility prohibited him from taking advantage of or exercising undue influence upon her, and that she had discussed the rules previously with independent counsel. McCaw stated: "I acknowledge that you are not taking advantage of, or exercising undue influence as a result of, our personal relationship in connection with the formation of the [Telecom] company."

Telecom LLC, a Delaware company, was created to hold Parker's equity interests pursuant to the Telecom Agreement. McCaw capitalized the company with 9.7 million shares of Nextlink Communications stock that were held in the Ampersand Telecom Trust. Parker was the trustee of the trust, and McCaw its sole beneficiary.

The arbitrator described the complicated Telecom Agreement as "unique" and dissimilar to a stock option agreement. He stated: "[T]he Telecom Agreement left McCaw completely in control of the strike price, timing of the sale and gave her the unrestricted right and opportunity to change the agreement prospectively at her whim. Moreover, the profit increase if any, was subject to a preferred return to the capital interest of McCaw, the managing member, before calculating profit sharing."

### Stanford Farms Trust

McCaw is the settlor and sole beneficiary of the Stanford Farms Trust, which holds title to her residential real property. McCaw appointed Parker as trustee of the trust. The trust agreement contains an indemnity provision indemnifying the trustee for damages, attorney's fees, and other losses.

McCaw directed Parker to file a lawsuit against the California Coastal Commission, regarding an asserted public easement upon her beachfront property. After Parker did so, the Coastal Commission cross-complained against him individually and as trustee, and sought substantial fines against him. Parker employed attorneys in the Coastal Commission litigation and McCaw initially paid his legal fees.

### Parker's Dismissal

In December 1999 and thereafter, McCaw became "uncomfortable" with the increasing value of the Nextlink Communications stock funding the stock incentive agreement. The arbitrator described the increase in value of the stock as "spectacular." McCaw then attempted to renegotiate the Employment Agreement and the Telecom Agreement. Parker rejected McCaw's proposals.

On January 29, 2000, Holdings dismissed Parker from employment. A month earlier, McCaw had evaluated Parker's employee performance as "[n]ear perfect." The romantic relationship between them had ended in April 1999.

McCaw thereafter discontinued paying Parker's legal fees in the Coastal Commission litigation. Parker paid the legal fees and continued with the litigation. Eventually, McCaw appointed Cole as successor trustee of the Stanford Farms Trust.

Parker demanded that Holdings pay him $ 1.4 million severance pay pursuant to the Employment Agreement. He also demanded benefits pursuant to the stock incentive agreement, and reimbursement of attorney's fees in the Coastal Commission litigation. McCaw and Holdings refused payment and asserted, in part, that the Employment Agreement and Telecom Agreement were void due to Parker's undue influence and his failure to comply with the duties imposed by rule 3–300 of the Rules of Professional Conduct of the State Bar of California.

## PROCEDURAL HISTORY

The parties engaged in a lengthy but unsuccessful mediation of their dispute. On February 1, 2001, Parker then brought this lawsuit against McCaw, her business entities, and Stanford Farms trustee Cole, alleging causes of action for breach of contract, among many others. Defendants sought an order compelling arbitration and dismissing or staying the lawsuit. (Code Civ. Proc., §§ 1281.2 & 1281.4.)[1] McCaw relied upon the mandatory (and conflicting in part) arbitration provisions set forth in the Employment Agreement and the Telecom Agreement, as follows:

### Employment Agreement Arbitration Provisions

"10.4.1. Any controversy, dispute or claim arising from this Agreement that cannot be resolved by the parties in good faith shall be settled by arbitration before a sole neutral arbitrator in accordance with the then-applicable rules of the American Arbitration Association . . . . The arbitration shall be held in Santa Barbara, California . . . . The arbitrator . . . may not award punitive or exemplary damages. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration."

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

Paragraph 10.4.2 provides for an award of reasonable attorney's fees and costs to the "prevailing party on each material issue." Paragraph 10.3 states that "[t]his Agreement and the legal relations between the parties shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and performed in such State."

*Telecom Agreement Arbitration Provisions*

The Telecom Agreement provides for this mandatory dispute resolution: good faith negotiations by the parties; mediation under the commercial mediation rules of the American Arbitration Association; and binding arbitration. Paragraph 11.12.3 states: "If a determination is made . . . that continuation of the mediation process is not warranted, the dispute shall be submitted to binding arbitration by a panel of three (3) arbitrators pursuant to the Commercial Arbitration Rules of the American Arbitration Association . . . . The arbitration shall be held in Los Angeles, California or such other location as mutually agreed upon by the parties . . . . The award rendered by arbitration shall be final, binding and [a] nonappealable judgment . . . . Special, consequential or punitive damages shall not be awarded . . . ."

Paragraph 11.12.5 provides that "[t]he parties shall equally split the fees of the mediator and the arbitrator."

Paragraph 11.2 states that the agreement "shall be construed and enforced in accordance with the internal laws of the State of Delaware."

On March 16, 2000, defendants demanded in writing that Parker submit to binding arbitration. Defendants stated that because the issues under each agreement were "intertwined and interrelated," they would agree "to consolidate the dispute resolution proceedings under the terms set forth in the [Telecom] LLC Agreement."

On February 22, 2001, McCaw filed separate demands for arbitration with the American Arbitration Association, "Commercial Arbitration Rules," concerning the two agreements. She requested "a panel of three arbitrators" to preside over the Telecom Agreement dispute "pursuant to the parties' agreement." McCaw personally sought damages for fraud and intentional infliction of emotional distress, among other claims.

Following exhaustive written and oral argument by the parties, the trial court granted defendants' motion to compel arbitration. The trial court ruled, however, that the "two arbitrations be consolidated" because "the issues presented . . . are so intertwined that the interests of justice require [consolidation before] one arbitration panel." It also decided that the "arbitrators shall be authorized to award any and all monetary [punitive] damages which could be awarded in a court of law."

Parker then requested the trial court to resolve the conflicting arbitration procedures set forth in the two agreements "to achieve substantial justice under all the circumstances." (§ 1281.3 [consolidation of separate arbitration proceedings].) Specifically, he requested that the trial court order defendants to pay the arbitrators' fees, "if [the] Court determines that there should be a three-person panel as demanded by [defendants]." Parker stated in his written argument that "the defendants have insisted that the arbitration be conducted by a three-person panel." He relied upon *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669], discussing rules of unconscionability and employee arbitration agreements. Defendants replied and asserted their "right to a panel of three arbitrators under the [Telecom] Agreement."

After additional written and oral argument, the trial court ordered arbitration to proceed before "a single arbitrator [who] will assign the final fees." The court also ordered that the arbitration proceedings take place in Santa Barbara. In accordance with the rules of the American Arbitration Association, the parties jointly selected retired Justice David N. Eagleson as arbitrator.

### Arbitration Award

The arbitrator found that McCaw and her business entities breached the employment agreement, the Stanford Farms Trust agreement, and the Telecom Agreement. He rejected McCaw's claims that Parker exercised undue influence upon her, or that he violated Rules of Professional Conduct, rule 3-300. In part, the arbitrator awarded Parker $1.4 million in severance pay; $9.75 million damages for breach of the stock incentive agreement; attorney's fees concerning the Stanford Farms Trust litigation; and $100,000 punitive damages against McCaw.

The arbitrator specifically found that McCaw was "a totally unconvincing witness." He stated: "[McCaw] waffled, contradicted herself, was generally uncertain, suffered from unusual lack of recollection, was evasive and expressed denial of events even in the face of written evidence to the contrary." The arbitrator also found that Cole was "a completely compromised witness" in view of his continued employment with McCaw and

Holdings. The arbitrator stated that Cole "fell on his sword" for McCaw, and that he did not testify "forthrightly." In contrast, the arbitrator found the testimony of Parker and third party witnesses credible.

Parker filed a petition pursuant to section 1285 et seq., to confirm the arbitration award. Defendants resisted the petition and sought to vacate the award. They asserted in part that the trial court erred by consolidating the arbitration proceedings before one arbitrator, and by permitting the arbitrator to award punitive damages.

The trial court granted the petition to confirm the award and denied defendants' cross-petition to vacate. Among other things, the trial court concluded that consolidation of the arbitration proceedings was proper pursuant to sections 1281.3 and 1293. The trial court also reasoned that the arbitrator awarded punitive damages against McCaw personally, not against any party to the Employment Agreement or the Telecom Agreement.

Defendants appeal and contend that the trial court's order consolidating arbitration before a single arbitrator and permitting punitive damages, infringed upon their rights pursuant to California, Delaware, and federal law. (§§ 1294, subd. (d) [appealability of judgment entered upon arbitration award] & 1294.2; *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454 [9 Cal.Rptr.2d 862] [order compelling arbitration is appealable from judgment confirming arbitration award].)

## DISCUSSION

### I.

Defendants argue that the trial court erred by consolidating the arbitrations because the criteria of section 1281.3, subdivisions (2) and (3), were not satisfied. (*Gordon v. G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1007 [56 Cal.Rptr.2d 914] [consolidation of arbitrations may not impair substantial right of party to the arbitration agreement].) They rely upon *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 [88 Cal.Rptr.2d 366, 982 P.2d 229] (arbitration shall proceed "*as the parties themselves have agreed*") and *Hyundai America v. Meissner & Wurst GMBH & Co.* (N.D.Cal. 1998) 26 F.Supp.2d 1217, 1218–1220 (improper to consolidate separate arbitration proceedings where express venue and choice of law provisions differ).

Defendants assert that the differing arbitration provisions concerning venue, choice of law, and the number of arbitrators, are substantial contract rights that the trial court may not impair. They argue that the number of arbitrators chosen to decide a particular controversy is significant given the

limited judicial review of an arbitrator's decision. (*Vandenberg v. Superior Court, supra,* 21 Cal.4th 815, 831–832 [general discussion of arbitration process and limited judicial review thereof]; *Szuts v. Dean Witter Reynolds, Inc.* (11th Cir. 1991) 931 F.2d 830, 830–832 [remand for new arbitration where two arbitrators decided matter under arbitration agreement requiring "at least three arbitrators"].) Stung by the arbitrator's credibility determinations, defendants assert that a three-arbitrator panel likely would have resulted in a more favorable decision to them. (*Szuts v. Dean Witter Reynolds, Inc., supra,* 931 F.2d 830, 831, fn. 3 [panel of three arbitrators allows arbitrators to consult with each other upon the outcome].)

Defendants add that there was no likelihood of *conflicting* rulings without consolidation. (§ 1281.3, subd. (3) [consolidation allowable only if there exists "common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator"].) They point out that the two agreements were negotiated and executed at different times, and a defense of undue influence could apply to one agreement alone.

Alternatively, defendants argue that the trial court should have applied Delaware law, which they assert does not permit court-ordered consolidation of separate arbitration proceedings. They add that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts California law and that a panel of three arbitrators, as required by the Telecom Agreement, should have decided the propriety of consolidation. (*Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 451 [156 L.Ed.2d 414, 123 S.Ct. 2402] [arbitrator determines whether agreement allows class arbitration]; *Yuen v. Superior Court* (2004) 121 Cal.App.4th 1133, 1135 [18 Cal.Rptr.3d 127] [in an arbitration governed by FAA, arbitrator decides whether separate arbitrations may be consolidated].)

## II.

Parker responds that defendants consented to consolidation and did not object to a single arbitrator. (*Weyerhaeuser Co. v. Western Seas Shipping Co.* (9th Cir. 1984) 743 F.2d 635, 636–637 [parties may implicitly or explicitly consent to consolidation].) He points out that defendants demanded arbitration and proposed consolidation because "the[] issues are intertwined and interrelated." Parker relies upon the general rule of invited error. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79] [" 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' "].)

Parker adds that defendants did not object either to consolidation or to the number of arbitrators during the arbitration hearing. He claims they have waived the issue on appeal. (*United Steelworkers, Etc. v. Smoke-Craft, Inc.* (9th Cir. 1981) 652 F.2d 1356, 1360 [waiver where arbitrating party fails to present argument why arbitration should not proceed].)

Parker defends the trial court's order concerning a single arbitrator under the holding of *Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th 83, 110 (employment arbitration agreement cannot require employee to bear expenses that he would not bear in court action). He claims that one-half the expense of a three-arbitrator panel would be prohibitive, given the financial pressure placed upon him by McCaw.

Parker also contends that the Employment Agreement's provision for a single arbitrator controls the Telecom Agreement's arbitration provision for three arbitrators because the parties executed the Employment Agreement later. (*Frangipani v. Boecker* (1998) 64 Cal.App.4th 860, 863 [75 Cal.Rptr.2d 407] [later-executed agreement supercedes a former inconsistent agreement].) He adds that the two agreements must be considered together as a plan of "executive compensation." (Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].)

Finally, Parker asserts that the trial court properly exercised its discretion by consolidating the arbitrations before a single arbitrator.

## III.

Section 1281.3 permits consolidation of separate arbitration proceedings under certain circumstances: "A party to an arbitration agreement may petition the court to consolidate separate arbitration proceedings, and the court may order consolidation of separate arbitration proceedings when: [¶] . . . [¶] (2) The disputes arise from the same transactions or series of related transactions; and [¶] (3) There is common issue or issue of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators." In the event that the arbitration agreements "contain inconsistent provisions, the court shall resolve such conflicts and determine the rights and duties of the various parties to achieve substantial justice under the circumstances." (*Ibid.*)

■ Court-ordered consolidation does not achieve substantial justice under the circumstances if it substantially alters a party's contractual rights, or it results in unfair prejudice. (*Gordon v. G.R.O.U.P., Inc., supra,* 49 Cal.App.4th 998, 1007; *Garden Grove Community Church v. Pittsburgh-Des Moines Steel*

*Co.* (1983) 140 Cal.App.3d 251, 264 [191 Cal.Rptr. 15].) ■ We review a trial court's ruling regarding consolidation of arbitration proceedings for an abuse of discretion. (*Gordon v. G.R.O.U.P., Inc, supra,* 49 Cal.App.4th 998, 1007.)

■ Here the trial court erred by resolving the conflicting arbitration provisions in favor of a single arbitrator. The parties to the Telecom Agreement agreed to three arbitrators to decide any dispute thereunder. Under circumstances here, the right to a three-arbitrator panel is a substantial contractual right. (*Szuts v. Dean Witter Reynolds, Inc., supra,* 931 F.2d 830 [vacating arbitration award rendered by two arbitrators when contract required three arbitrators].) The contractual provision for three arbitrators requires that "three arbitrators participate in the arbitration by hearing all the evidence presented by the parties; by hearing the arguments presented by the parties; and by participating in the consultation and deliberation [in] the decision." (*Id.,* at p. 831.) A three-arbitrator panel minimizes the risk of factual or legal error, which error generally is not reviewable pursuant to the law of arbitration. (*Vandenberg v. Superior Court, supra,* 21 Cal.4th 815, 831 ["Limited judicial review is a well-understood feature of private arbitration, inherent in the nature of the arbitral forum as an informal, expeditious, and efficient alternative means of dispute resolution"].) ■ Owing to its contractual derivation, arbitration must proceed *"as the parties themselves have agreed."* (*Ibid.*) A party may not "avoid the terms of separately negotiated unambiguous contracts and rewrite them under the authority of California state arbitration procedures contained in [section] 1281.3." (*Hyundai America v. Meissner & Wurst GMBH & Co., supra,* 26 F.Supp.2d 1217, 1219.)

■ A three-arbitrator panel allows the arbitrators to hear, consider, and weigh the evidence and arguments presented by the parties, and to participate in consultation and deliberation collectively. (*Szuts v. Dean Witter Reynolds, Inc. supra,* 931 F.2d 830, 831 [agreement requiring arbitration before three arbitrators "means what it says"].) The American Arbitration Association's Commercial Dispute Resolution Procedures and Arbitration Rules provide for three arbitrators in disputes involving more than $1 million, unless the contract otherwise provides. Here reasonable persons might decide differently concerning the existence of an event triggering Parker's rights to payment under the Telecom Agreement. As the arbitrator concluded, the Telecom Agreement is "unique" and not a stock option agreement. Among other things, it gives McCaw "the unrestricted right and opportunity to change the agreement prospectively at her whim."

In part, Parker's arguments of waiver are factually incorrect. Although defendants offered to consolidate the two arbitrations in a letter to counsel, they conditioned the consolidation upon application of "the terms set forth in the Telecom Agreement." The terms, of course, included binding arbitration by a panel of three arbitrators. McCaw also filed separate demands for arbitration with the American Arbitration Association, specifically demanding "a panel of three arbitrators" to determine the Telecom Agreement dispute. Defendants insisted upon a three-arbitrator panel in written argument in the trial court. Parker recognized this persistent demand when he stated in his written argument that "the defendants have insisted that the arbitration be conducted by a three person-panel." Moreover, defendants brought a motion to compel arbitration pursuant to section 1281.2, not a motion to consolidate arbitrations pursuant to section 1281.3.

■ Defendants also were not required to reargue the contractual requirement of a three-arbitrator panel to the single arbitrator. The trial court had ruled that a single arbitrator would preside and the arbitrator had no jurisdiction to reverse that order. (*Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264, 269–270 [118 Cal.Rptr. 309] [party not required to argue to the arbitrator that trial court erred because "arbitrator had no jurisdiction to reverse an order of the [trial] court"].) ■ Moreover, defendants were not required to challenge the pre-arbitration orders here by petition for writ. (*Id.,* at p. 270 [failure to file writ petition does not preclude appellate consideration of prearbitration orders].)

The trial court also erred to the extent it relied upon *Armendariz v. Foundation Health Psychcare Services, Inc. supra,* 24 Cal.4th 83, 110–111. *Armendariz* concerned mandatory arbitration of an employee's claims under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). (24 Cal.4th at pp. 90–91.) Parker does not raise claims under FEHA, nor is the Employment Agreement a "generic" or standard agreement. Moreover, Parker earned $700,000 annual salary and negotiated or had the opportunity to negotiate the terms of the Employment Agreement and Telecom Agreement. He is also an attorney. The unconscionability rules of *Armendariz* have no application here.

We also reject Parker's contentions that we must construe or consider the two agreements together, or that the Employment Agreement prevails because the parties executed it later. Broadly considered, each agreement concerns Parker's compensation for his employment. The agreements were separately negotiated, however, between Parker and different entities. Thus, the Employment Agreement was executed by Parker and Holdings in June 1999, and made effective as of January 1, 1999. The Telecom Agreement was executed by Parker individually and as trustee of the Ampersand Telecom Trust on

March 15, 1999, and made effective as of February 19, 1999. The trial court neither expressly nor impliedly made a factual finding that the agreements "are to be taken together" because they relate to the same matters between the same parties. (Civ. Code, § 1642.) Civil Code section 1642 was not an issue in the trial court.

## IV.

### *Ink by the Barrel*[2]

Defendants also contend that the trial court erred by striking the bilateral punitive damages limitation set forth in each of the two agreements. They assert the limitation is not unconscionable because the agreements are not adhesive, and the limitation applies fully and equally to each party.

The arbitrator decided that there existed "many examples" of McCaw's "oppressive" and "despicable" conduct, and described three examples: McCaw "stripped" Ampersand Telecom LLC of its assets, in part to support a line of credit to purchase the Santa Barbara News Press newspaper; she employed a public relations expert to place articles in her newspaper complimentary to herself and derogatory to Parker; and she filed a meritless complaint with the State Bar "out of spite to harass and intimidate" Parker. These actions were done to create a community animus toward Parker and affect his legal reputation in the legal and business community.

Neither the Employment Agreement nor the Telecom Agreement prohibits the imposition of punitive damages against McCaw personally. During the arbitration, she sought damages against Parker for her personal claims of fraud and intentional infliction of emotional distress. The punitive damages awarded Parker arose from McCaw's conduct, and rested upon Parker's personal claims against her. Any error in striking the punitive damages restriction concerning parties to the Employment Agreement and Telecom Agreement is harmless.

## V.

In view of our resolution, we need not discuss the parties' remaining contentions, including arguments regarding the FAA or Delaware law.

---

[2] *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 744 [257 Cal.Rptr. 708, 771 P.2d 406] ("As Mark Twain observed, no one should get into a battle with those who use ink by the barrel"—in most cases).

## DISPOSITION

The judgment is reversed concerning confirmation of the arbitration award regarding the Ampersand Telecom agreement and any attorney's fees awarded thereupon. The judgment is otherwise affirmed. McCaw shall recover costs on appeal.

Coffee, J., and Perren, J., concurred.